## HARRIS, SUPERINTENDENT, GREEN HAVEN CORRECTIONAL FACILITY *v.* RIVERA

No. 81–17.   Decided December 14, 1981

PER CURIAM.

The questions presented by the certiorari petition concern the constitutionality of inconsistent verdicts in a nonjury criminal trial. Certiorari is granted and the judgment of the United States Court of Appeals for the Second Circuit is reversed.

During the morning of March 26, 1973, respondent, Jose Rivera, his wife Cynthia Humdy, and their friend, Earl Robinson, entered the apartment of Milagros Torres. After a neighbor heard a woman scream, he called the police. The police arrested Humdy on the fire escape with $540 in cash in her coat pocket, and when the apartment door was opened, they found the place in shambles and arrested respondent and Robinson.

Each of the three intruders was indicted on five separate charges arising out of this one episode.[1] They were tried jointly by a justice of the Supreme Court of New York sitting without a jury. The principal government witness was the victim Torres; Robinson was the only defense witness. If the judge had credited all of the testimony of Torres, presumably he would have found all three defendants guilty on all counts; acquittals presumably would have been rendered if the judge had credited all of Robinson's testimony. However, he found all defendants not guilty on three counts, acquitted Robinson on all counts, and convicted respondent and his wife of robbery in the second degree, grand larceny in the third degree, and burglary in the third degree.[2] Respondent's convictions were affirmed on appeal. *People* v. *Rivera*, 57 App. Div. 2d 738, 393 N. Y. S. 2d 630, leave to appeal denied, 42 N. Y. 2d 894, 366 N. E. 2d 887 (1977).

---

[1] They were indicted for robbery in the first degree, robbery in the second degree, possession of a dangerous weapon, grand larceny in the third degree, and burglary in the second degree.

[2] The grand larceny count was dismissed at the sentencing stage as a lesser included count within robbery in the second degree.

In 1978, the United States District Court for the Southern District of New York denied respondent's application for a federal writ of habeas corpus. After reviewing the trial record, the District Court rejected several challenges to the conviction which he described as "variations on the claim of insufficiency of the evidence."[3]

On appeal from that judgment, the United States Court of Appeals for the Second Circuit concluded that there was an apparent inconsistency in the state trial judge's general verdicts acquitting Robinson and convicting respondent. 643 F. 2d 86. The Court of Appeals held that the New York trial judge had committed constitutional error because he had not explained that apparent inconsistency on the record.[4] The court therefore entered an order requiring the state trial court either to grant respondent a new trial or to demonstrate by appropriate findings that there is a rational basis

---

[3] "The next argument set forth is directed at the sufficiency of the evidence presented in petitioner's state court criminal trial. Such an allegation is beyond the scope of federal habeas corpus review and does not rise to the level of a constitutional infringement, *United States ex rel. Nersesian* v. *Smith*, 418 F. Supp. 26, 27 (SDNY 1976) unless 'there was no proof whatever of the crime charged.' *United States ex rel. Terry* v. *Henderson*, 426 F. 2d 1125, 1131 (2d Cir. 1972). I have reviewed the trial transcript. Any allegation that the trial record is devoid of evidence must be rejected as are Petitioner's Points IV, VI, VII, and VIII which, when liberally read, are variations on the claim of insufficiency of the evidence." App. to Pet. for Cert. A–12.

The District Court's ruling predated this Court's decision in *Jackson* v. *Virginia*, 443 U. S. 307 (1979). The Court of Appeals held, however, that the insufficiency of the evidence claim is without merit even under the test of *Jackson*. 643 F. 2d 86, 90, n. 2 (CA2 1981).

[4] The Court of Appeals concluded that "when verdicts in a non-jury trial are facially inconsistent, the Due Process Clause of the Fourteenth Amendment does not permit a conviction to stand unless the trial court demonstrates by appropriate findings that the conviction validly rests on a rational basis." *Id.*, at 87.

for the facially inconsistent verdicts.[5]   Under the Court of
Appeals' holding, the adequacy of that explanation would
thereafter be subject to review by the federal courts, which,
if they were persuaded that the verdicts were irrationally
inconsistent, would then decide whether respondent's con-
viction is constitutionally permissible.[6]   The Court of Ap-
peals recognized that its constitutional holding was
unprecedented.[7]

---

[5] "For the foregoing reasons we reverse the District Court's judgment
and remand with directions to enter an order conditionally vacating peti-
tioner's conviction and awarding him a new trial unless the state trial court
demonstrates by appropriate findings rendered within ninety days that pe-
titioner's conviction is valid." *Id.*, at 97.

[6] "If the state trial court makes findings purporting to demonstrate the
validity of the conviction, petitioner may return to the District Court and
renew his habeas corpus challenge to his conviction.   At that point, the
issue will be whether the state court conviction, considered in light of the
acquittal of petitioner's co-defendant and in light of the state trial court's
findings, denies petitioner his liberty without due process of law." *Id.*, at
97–98 (footnote omitted).

[7] See *id.*, at 94.   The Court of Appeals relied on *United States* v.
*Maybury*, 274 F. 2d 899 (1960), in which a divided panel of the Second Cir-
cuit reversed a conviction on one count of a two-count indictment because
the majority found the acquittal on the second count to be inconsistent with
the conviction on the first.   Judge Friendly expressed the view that the
defendant could be retried on both counts, *id.*, at 904–906; Judge Lumbard
expressed the view that the defendant could be retried on neither count
and that the indictment must be dismissed, *id.*, at 906–907 (dissenting in
part).   Judge Learned Hand concluded that the verdicts were not logically
inconsistent and would not have reversed the conviction "[r]egardless of
whether the doctrine of [*Dunn* v. *United States*, 284 U. S. 390 (1932)] ap-
plies to cases tried to a judge." *Id.*, at 908 (dissenting in part and concur-
ring in part).   As the Court of Appeals in this case recognized, "in prohib-
iting inconsistent bench trial verdicts, *Maybury* does not purport to rest on
any provision of the Constitution and may well have been decided solely in
the exercise of the Court's supervisory power over the administration of
criminal justice within this Circuit."   643 F. 2d, at 94.

In this case the Court of Appeals described the "*Maybury* rule barring
inconsistent verdicts in federal criminal bench trials" as "well established

This case does not raise any question concerning the significance that an appellate court may attach to an apparent inconsistency in a verdict that is subject to review on direct appeal. This federal proceeding constituted a collateral attack on the final judgment of a state court that already had been affirmed on direct appeal. In such a proceeding a federal court is authorized to issue "a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U. S. C. § 2254(a).[8]

---

in this Circuit." *Id.*, at 91. We note, however, that in none of the three cases cited for that proposition was a verdict actually overturned on the ground of inconsistency. Indeed, in one of those cases the court expressly noted that an inconsistency resulting from an acquittal that may have rested on the trial judge's erroneous view of the law could not justify reversal of the conviction. See *United States* v. *Wilson,* 342 F. 2d 43, 45 (CA2 1965). In all events, the Court of Appeals noted: "To our knowledge, however, this is the first time that a habeas applicant has asked us to overturn a state conviction on the basis of the *Maybury* rule." 643 F. 2d, at 91.

In *United States* v. *Duz-Mor Diagnostic Laboratory, Inc.,* 650 F. 2d 223 (1981), a panel of the United States Court of Appeals for the Ninth Circuit followed the Second Circuit's reasoning in this case.

[8] In *Cupp* v. *Naughten,* 414 U. S. 141, 146 (1973), with particular reference to a challenged jury instruction, the Court articulated the difference between a federal court of appeals' supervisory power over the district courts within its jurisdiction and the court of appeals' authority to grant relief under 28 U. S. C. § 2254:

"Within such a unitary jurisdictional framework the appellate court will, of course, require the trial court to conform to constitutional mandates, but it may likewise require it to follow procedures deemed desirable from the viewpoint of sound judicial practice although in nowise commanded by statute or by the Constitution. Thus even substantial unanimity among federal courts of appeals that the instruction in question ought not to be given in United States district courts within their respective jurisdictions is not, without more, authority for declaring that the giving of the instruction makes a resulting conviction invalid under the Fourteenth Amend-

In view of the limited scope of review of a state judgment authorized in a federal habeas corpus proceeding, it is plain that the Court of Appeals erred in this case. On the assumption that the Court of Appeals correctly determined that the verdicts are facially inconsistent, we hold that there is no federal requirement that a state trial judge explain his reasons for acquitting a defendant in a state criminal trial; even if the acquittal rests on an improper ground, that error would not create a constitutional defect in a guilty verdict that is supported by sufficient evidence and is the product of a fair trial.

I

The work of appellate judges is facilitated when trial judges make findings of fact that explain the basis for controversial rulings.[9] Although there are occasions when an explanation of the reasons for a decision may be required by the demands of due process,[10] such occasions are the exception rather than the rule.[11] Federal judges have no general supervisory power over state trial judges; they may not require the observance of any special procedures except when neces-

---

ment. Before a federal court may overturn a conviction resulting from a state trial in which this instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."

It is noteworthy that the Courts of Appeals are not in agreement that the *Maybury* holding is an appropriate exercise of the supervisory power over federal district courts. See, *e. g.*, *United States* v. *West*, 549 F. 2d 545 (CA8), cert. denied, 430 U. S. 956 (1977).

[9] See *Arizona* v. *Washington*, 434 U. S. 497, 517 (1978) ("Review of any trial court decision is, of course, facilitated by findings and by an explanation of the reasons supporting the decision. No matter how desirable such procedural assistance may be, it is not constitutionally mandated in a case such as this").

[10] See *Morrissey* v. *Brewer*, 408 U. S. 471, 489 (1972); *Wolff* v. *McDonnell*, 418 U. S. 539, 564–565 (1974).

[11] Moreover, when other procedural safeguards have minimized the risk of unfairness, there is a diminished justification for requiring a judge to ex-

sary to assure compliance with the dictates of the Federal Constitution. Accordingly, the Court of Appeals erred when it directed the state trial judge to provide an explanation of the apparent inconsistency in his acquittal of Robinson and his conviction of respondent without first determining whether an inexplicably inconsistent verdict would be unconstitutional.[12]

## II

Inconsistency in a verdict is not a sufficient reason for setting it aside. We have so held with respect to inconsistency between verdicts on separate charges against one defendant, *Dunn* v. *United States*, 284 U. S. 390 (1932),[13] and also with respect to verdicts that treat codefendants in a joint trial inconsistently, *United States* v. *Dotterweich*, 320 U. S. 277, 279 (1943).[14] Those cases, however, involved jury trials; as the Court of Appeals correctly recognized, both of those opin-

---

plain his rulings. See *Connecticut Board of Pardons* v. *Dumschat*, 452 U. S. 458, 472 (1981) (STEVENS, J., dissenting).

[12] Our holding that the risk of constitutional error inherent in facially inconsistent bench trial verdicts is not substantial, see discussion *infra*, at 345–348, undercuts the initial premise of the Court of Appeals' analysis of the question whether a state prisoner is constitutionally entitled to an explanation of such verdicts.

[13] Accord, *Hamling* v. *United States*, 418 U. S. 87, 101 (1974). Cf. *Hartzell* v. *United States*, 322 U. S. 680, 682, n. 3 (1944) (the trial court's setting aside of the conspiracy convictions of petitioner's only alleged co-conspirators "makes it impossible to sustain the petitioner's conviction upon . . . the conspiracy count"); but cf. *Standefer* v. *United States*, 447 U. S. 10 (1980) (a defendant accused of aiding and abetting in the commission of a federal offense may be convicted after the named principal has been acquitted of that offense in a previous trial).

[14] "Equally baseless is the claim of Dotterweich that, having failed to find the corporation guilty, the jury could not find him guilty. Whether the jury's verdict was the result of carelessness or compromise or a belief that the responsible individual should suffer the penalty instead of merely increasing, as it were, the cost of running the business of the corporation, is immaterial. Juries may indulge in precisely such motives or vagaries. *Dunn* v. *United States*, 284 U. S. 390."

ions stressed the unreviewable power of a jury to return a verdict of not guilty for impermissible reasons.[15]  It is argued that a different rule should be applied to cases in which a judge is the factfinder.

Although *Dunn* and *Dotterweich* preclude a holding that inconsistency in a verdict is intolerable in itself, inconsistency nevertheless might constitute evidence of arbitrariness that would undermine confidence in the quality of the judge's conclusion.  In this case, the Court of Appeals suggested the possibility that the trial judge might have relied on impermissible considerations such as the fact that neither respondent nor his wife testified, or knowledge of adverse information not contained in the record.[16]  Undeniably, these possibilities exist, but they also would have existed if Robinson had been convicted or if he had been tried separately.  In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions.  It is equally routine for them to instruct juries that no adverse inference may be drawn from a defendant's failure to testify; surely we must presume that they follow their own instructions when they are acting as factfinders.  We are not persuaded that an

---

[15] Justice Holmes' opinion in *Dunn*, his last for the Court, characteristically was brief and to the point.  He quoted the following passage from *Steckler* v. *United States*, 7 F. 2d 59, 60 (CA2 1925):

" 'The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.  We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.' "  *Dunn* v. *United States*, 284 U. S., at 393. After citing *Horning* v. *District of Columbia*, 254 U. S. 135 (1920), he added:

"That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible.  But verdicts cannot be upset by speculation or inquiry into such matters."  284 U. S., at 393–394.

[16] See 643 F. 2d, at 94–95.

apparent inconsistency in a trial judge's verdict gives rise to an inference of irregularity in his finding of guilt that is sufficiently strong to overcome the well-established presumption that the judge adhered to basic rules of procedure.[17]

Other explanations for an apparent inconsistency are far more likely. Most apparent is the likelihood that the judge's actual observation of everything that transpired in the courtroom created some doubt about the guilt of one defendant that he might or might not be able to articulate in a convincing manner.[18] In this case, if the judge was convinced beyond a reasonable doubt that respondent and his wife were both guilty, it would be most unfortunate if a concern about the plausibility of a lingering doubt about Robinson should cause him to decide to convict all three rather than to try to articulate the basis for his doubt.

It is also possible that the judge may have made an error of law and erroneously assumed, for example, that Robinson should not be found guilty without evidence that he was to share in the proceeds of the larceny. There is no reason— and surely no constitutional requirement—that such an error pertaining to the case against Robinson should redound to the benefit of respondent.[19]

---

[17] Cf. *Arizona* v. *Washington*, 434 U. S., at 518 (WHITE, J., dissenting): "[In *Townsend* v. *Sain*, 372 U. S. 293 (1963), the] Court concluded that 'the coequal responsibilities of state and federal judges in the administration of federal constitutional law are such that we think the district judge may, in the ordinary case in which there has been no articulation, properly assume that the state trier of fact applied correct standards of federal law to the facts, in the absence of evidence . . . that there is reason to suspect that an incorrect standard was in fact applied.' *Id.*, at 314–315. A silent record is not a sufficient basis for concluding that the state judge has committed constitutional error; the mere possibility of error is not enough to warrant habeas corpus relief."

[18] In fact, the New York Supreme Court Justice who tried this case stated that he had a reasonable doubt as to Robinson's guilt. 643 F. 2d, at 90.

[19] See n. 7, *supra.*

Even the unlikely possibility that the acquittal is the product of a lenity that judges are free to exercise at the time of sentencing but generally are forbidden to exercise when ruling on guilt or innocence, would not create a constitutional violation. We are aware of nothing in the Federal Constitution that would prevent a State from empowering its judges to render verdicts of acquittal whenever they are convinced that no sentence should be imposed for reasons that are unrelated to guilt or innocence. The Constitution does not prohibit state judges from being excessively lenient.

The question that respondent has standing to raise is whether his trial was fairly conducted. The trial judge, the New York appellate courts, the Federal District Court, and the United States Court of Appeals all agreed that the record contains adequate evidence of his guilt.[20] These courts also agreed that the proceedings leading up to respondent's conviction were conducted fairly. Apart from the acquittal of Robinson, this record discloses no constitutional error. Even assuming that this acquittal was logically inconsistent with the conviction of respondent, respondent, who was found guilty beyond a reasonable doubt after a fair trial, has no constitutional ground to complain that Robinson was acquitted.[21]

*Reversed.*

---

[20] "The question whether the evidence is constitutionally sufficient is of course wholly unrelated to the question of how rationally the verdict was actually reached. Just as the standard announced today does not permit a court to make its own subjective determination of guilt or innocence, it does not require scrutiny of the reasoning process actually used by the factfinder—if known." *Jackson* v. *Virginia,* 443 U. S., at 319–320, n. 13.

[21] Cf. 643 F. 2d, at 94, n. 5 (rejecting respondent's equal protection challenge to the allegedly inconsistent verdicts). See also *North Carolina* v. *Pearce,* 395 U. S. 711, 722–723 (1969). Our conclusion that federal habeas corpus relief is not authorized in this case is buttressed by the practical problems with the Court of Appeals' holding even if some constitutional right of the convicted defendant were more clearly implicated. In *Henderson* v. *Kibbe,* 431 U. S. 145, 154, n. 13 (1977), we noted that such practi-

JUSTICE MARSHALL, dissenting.

I write separately to underscore my disapproval of what I perceive to be a growing and inexplicable readiness on the part of this Court to "dispose of" cases summarily. Perhaps this trend is due to what is often lamented as our "increasing caseload." Whatever the reason for this trend, I believe that it can only detract from this Court's decisions in deserving cases by consuming time and energy better spent elsewhere.

Moreover, by deciding cases summarily, without benefit of oral argument and full briefing, and often with only limited access to, and review of, the record, this Court runs a great risk of rendering erroneous or ill-advised decisions that may confuse the lower courts: there is no reason to believe that this Court is immune from making mistakes, particularly under these kinds of circumstances. As Justice Jackson so aptly put it, although in a somewhat different context: "We are not final because we are infallible, but we are infallible only because we are final." *Brown* v. *Allen*, 344 U. S. 443, 540 (1953) (concurring in result). I believe that this Court should reserve its final imprimatur for those cases to which we give plenary review, after full briefing and argument.

---

cal problems are relevant in determining whether federal habeas relief is available:

"The strong interest in preserving the finality of judgments, [citations omitted], as well as the interest in orderly trial procedure, must be overcome before collateral relief can be justified. For a collateral attack may be made many years after the conviction when it may be impossible, as a practical matter, to conduct a retrial."

On remand from the federal habeas court, the state trial judge, if he is still on the bench, may not remember the criminal case, much less the reasons for convicting one codefendant but acquitting another. Confronted by defense counsel's assertion that the evidence of guilt was the same for both codefendants, he may well decide that he erroneously acquitted one codefendant; such a finding would have to satisfy the federal habeas court, but would hardly placate the habeas petitioner.

This is not to say that I believe that summary disposition is never appropriate. In my view, however, this Court should utilize this practice with more caution than has been true in the recent past.