865 F.2d 1260
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Maynard Don CODY, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Glen Samuel MARTIN, Jr., Defendant-Appellant.
 Nos. 88-5549, 88-5550.
 United States Court of Appeals, Fourth Circuit.
 Argued: Nov. 4, 1988.
Decided: Nov. 28, 1988.
 
 Ronald W. Howell (Ronald W. Howell, P.A., on brief), Robert Bobo Long, Jr. (Long, Parker, Payne & Warren, P.C., on brief), for appellants.
 Thomas Ernest Booth (Department of Justice; Thomas J. Ashcraft, United States Attorney, Jerry Miller, Assistant United States Attorney, on brief), for appellee.
 Before K.K. HALL and JAMES DICKSON PHILLIPS, Circuit Judges, and DENNIS R. KNAPP, Senior United States District Judge for the Southern District of West Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Maynard Don Cody and Glen Samuel Martin, Jr. challenge their criminal conspiracy conviction for false statements made in a matter within the jurisdiction of a federal agency and for violation of federal regulations governing the sale of burley tobacco. We affirm.
 
 
 2
 * To ensure compliance with federal quotas limiting the amount of burley tobacco that can be grown on any one farm, federal regulations prohibit farmers from marketing tobacco represented as grown on one's farm when it has been grown elsewhere. (Exceptions include transfer of quotas or partial quotas by sale or lease, which have their own well-defined procedures.) To ensure that all tobacco sales are properly recorded, a marketing card is issued to tobacco farmers for each farm that produces tobacco. The card indicates the maximum number of pounds of tobacco grown on the farm that can be marketed. Whenever a farmer markets tobacco, a state official records the amount of sale on the marketing card.
 
 
 3
 Roy Ammons grew burley tobacco on his North Carolina farms. Martin owned the Big Burley tobacco warehouse in Johnson City, Tennessee, and Cody worked as a tobacco hauler for Martin, transporting tobacco to the warehouse. On January 6, 1986, Ammons devised a plan to obtain money by permitting Martin to use Ammons' cards to sell tobacco not grown on Ammons' farms. Ammons called Cody, whom he knew well, to ask whether Martin, whom Ammons did not know, needed "any additional tobacco pounds." Cody replied that he would check with Martin. Two days later Cody called Ammons and told him that Martin "could use the pounds," and that Martin would pay Ammons fifty cents a pound. The following day Ammons gave four marketing cards to Cody, and told him to give them to Martin. Inside the packet of cards, Ammons inserted a small piece of paper that indicated how many pounds he was willing to sell. On January 16, Martin sold 13,823 pounds of tobacco that he identified, allegedly falsely, as having been grown on Ammons' farms. He received $20,199.08 for this sale. Several days later Cody gave Ammons a sealed envelope containing $6,911.50, which is equivalent to a payment of fifty cents per pound for the 13,823 pounds of tobacco.
 
 
 4
 In September 1987 Ammons, Cody, and Martin were charged in a one-count indictment of conspiracy under 18 U.S.C. Sec. 371. The object of the alleged conspiracy was twofold: first, an alleged violation of burley tobacco marketing regulations for both falsely marketing tobacco as produced on one farm when it was produced elsewhere, 7 C.F.R. Sec. 726.51, and making false reports or records, id. at Sec. 726.98, and second, an alleged violation of 18 U.S.C. Sec. 1001 for knowingly and willfully falsifying by trick, scheme, and device a material fact in a matter within the jurisdiction of an agency of the United States (here, the Department of Agriculture). In November Ammons entered a plea of guilty as a result of a plea agreement. At trial Ammons was the principal source of evidence for the conspiracy. The jury returned guilty verdicts against both Cody and Martin. Ammons was sentenced to a fine of $500, and $6,911.50 restitution. Cody received a suspended sentence of 60 days, one year probation, and a $500 fine, and Martin received a suspended sentence of three years, three years probation, a $10,000 fine, and $13,288.30 restitution.
 
 
 5
 On appeal Cody and Martin make three claims: that the grand jury indictment was impermissibly vague; that the evidence at trial was insufficient to sustain the conspiracy conviction; and that the government erred by partially dismissing the indictment against a co-conspirator.
 
 II
 
 6
 An indictment must be sufficiently detailed to apprise defendants of the charges against them so that they can both prepare their defense and plead the double jeopardy bar against reprosecution if later charged with the same offense. United States v. Hooker, 841 F.2d 1225, 1227 (4th Cir.1988) (en banc); United States v. American Waste Fibers Co., 809 F.2d 1044, 1046 (4th Cir.1987). The indictment under which Ammons, Cody, and Martin were charged was quite sufficient for that purpose. It tracked the language of the conspiracy statute, the false statement statute, and the deceptive tobacco marketing and recording regulations. It specified that the object of the conspiracy was the use of Ammons' marketing cards to sell tobacco not grown on his farms, described the critical events in the conspiracy, and listed fifteen overt acts in furtherance of the conspiracy.
 
 III
 
 7
 Cody and Martin also claim that there was insufficient evidence to prove a conspiracy, only hearsay evidence to prove Martin's participation, and insufficient evidence to prove that Cody participated in a knowing and willful manner.
 
 
 8
 Our standard for assessing on review the sufficiency of the evidence to convict of a criminal offense is whether "there is substantial evidence, viewed in the light most favorable to the government, to uphold the jury's decision." United States v. Barnes, 747 F.2d 246, 249 (4th Cir.1984); United States v. Winstead, 708 F.2d 925, 927 (4th Cir.1983). Here, there was substantial evidence to support the jury's conviction of Martin and Cody, for it was easily inferable from the evidence construed in the light most favorable to the government that the transaction between Martin, Cody, and Ammons involved a criminal conspiracy between the three.
 
 
 9
 Martin and Cody are correct that farmers can lease or sell their poundage allotments. 7 C.F.R. Sec. 726.68(a). Farmers can also sell their poundage to someone who is "neither the owner or operator of the farm to which the quota will be assigned." Id. at 726.68(e)(2)(ii). Martin and Cody neglect, however, to take into account that any such transfer requires extensive documentation and authorized approval, id. at 726.68(e), (g), and that no such evidence of this documentation or approval was adduced. Martin and Cody of course could claim ignorance of those requirements but their long association with the tobacco industry as reflected in the evidence surely supports the jury's contrary inference that they were not so ignorant. From that inference, the further inference that the transfer was to their knowledge illegal naturally flows. Similarly, while Martin and Cody were free to attempt to counter this inference by contending that there was not a transfer of poundage allotments but an actual sale of tobacco, the opposite inference is clearly supported by the fifty cents per pound price received by Ammons. There was also independent testimony and documentation of Martin's illegal recording and reporting of the transactions.
 
 
 10
 On the conspiracy charge, therefore, the only remaining questions are whether Martin and his illegal recording activities can be linked with the overt acts and conspiracy initiated by Ammons and whether Cody can be considered a knowing participant in the conspiracy. Martin's principal argument is that the only testimony directly linking him to Ammons was hearsay evidence: Ammons testified that Cody told him that Martin said he was interested in the tobacco pounds. The Supreme Court, however, recently has held that "there is little doubt that a co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy." Bourjaily v. United States, 107 S.Ct. 2775, 2781 (1987). Further, as already indicated, Ammons provided independent testimony and documentation of Cody's delivery of Ammons' marketing cards to Martin, Martin's use of them to sell tobacco, Cody's return of the cards, and Ammons' fifty cents per pound share in the proceeds from Martin's sale. "Once the existence of a conspiracy is established, the evidence need only establish a slight connection [of an individual] with the conspiracy," United States v. Seni, 662 F.2d 277, 285 n. 7 (4th Cir.1981), and the jury had more than sufficient evidence to convict Martin for his connection with the conspiracy.
 
 
 11
 Cody does not contest that he acted as an intermediary for Martin and Ammons. He urges, however, that he was not a knowing and willing participant in the conspiracy but at best only someone who aided and abetted. Certainly there was evidence from which the jury could so have interpreted his participation, or at least had reasonable doubts about its nature. But there was also evidence from which it could rationally have concluded that Cody as a veteran tobacco hauler familiar with the marketing requirements was privy to the scheme. There was sufficient evidence for the jury to infer that in acting as intermediary between Ammons and Martin, Cody was a knowing participant in the conspiracy. As with Martin's participation, the jury needed proof only of Cody's "slight connection with the conspiracy," id., in order to convict.
 
 IV
 
 12
 As part of Ammons' plea arrangement, the government dropped the portion of the indictment against Ammons which alleged a conspiracy to violate 18 U.S.C. Sec. 1001 (false statement) after Martin's and Cody's trial. This meant that Ammons was convicted only of the conspiracy to violate the federal tobacco regulations, which is a misdemeanor. Martin and Cody argue that this was an impermissible amendment of the indictment. We, however, view this dismissal of part of the indictment after trial as an appropriate narrowing of the indictment against one defendant, rather than an amendment. This dismissal has no effect on the conspiracy to market tobacco fraudulently on which Ammons, Martin, and Cody were all convicted, nor on the conspiracy to make false statements for which Cody and Martin were convicted. A prosecutor has the right to dismiss an indictment against a defendant for his or her cooperation at trial. See, e.g., United States v. Hamm, 659 F.2d 624 (5th Cir.1981) (en banc). It makes no difference that the verdicts between the three defendants might thereby have been made facially inconsistent. See Harris v. Rivera, 454 U.S. 339 (1981).
 
 
 13
 AFFIRMED.