104 F.3d 353
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Jose MATOS, Rafael Diaz, Petitioners-Appellants,
v.
Frank IRVIN, Superintendent, Wende Correctional Facility;
Charles Scully, Superintendent, Greenhaven
Correctional Facility, Respondents-Appellees.
 Nos. 95-2855(L), 95-2857(CON).
 United States Court of Appeals, Second Circuit.
 Nov. 15, 1996.
 
 Appeal from the United States District Court for the Southern District of New York (Leonard B. Sand, Judge ).
 APPEARING FOR APPELLANTS: Goldstein, Weinstein & Fuld, Bronx, NY
 APPEARING FOR APPELLEE: Morrie I. Kleinbart, Assistant District Attorney, New York County, New York, N.Y.
 S.D.N.Y.
 AFFIRMED.
 Before FEINBERG, LEVAL and PARKER, Circuit Judges,
 This cause came on to be heard on the transcript of record from the United States District Court for the Southern District of New York and was argued by counsel.
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court be and it hereby is AFFIRMED.
 Petitioners Jose Matos and Rafael Diaz appeal from an order of the United States District Court, Southern District of New York (Sand, J.), denying their petitions under 28 U.S.C. § 2254 to vacate their convictions by the Supreme Court, New York County.
 On March 22, 1986, police officers James Doyle and Edward McDermott responded to a police radio report of shots heard in Apartment 3C, 450 West 163rd Street. Arriving at that apartment, Doyle found the door slightly ajar and, gun drawn, pushed it open. He saw Diaz standing in an interior hallway holding a handgun at his side and Matos and Rafael Andujar standing in an interior room. Doyle ordered Diaz to drop his gun and while retrieving it saw Ramon Perez in another room, standing next to a table on which he observed a scale, a granulator, and four bags of cocaine.
 Diaz, Matos, Andujar, and Perez were jointly indicted for acting in concert to commit Criminal Possession of a Controlled Substance in the First Degree. Diaz and Perez were also charged with Criminal Possession of a Weapon in the Third Degree. Following a jury trial in Supreme Court, New York County (Nardelli, J.), all four defendants were convicted.
 After trial, Justice Nardelli held a hearing on the defendants' claim that the police officers' warrantless entry into Apartment 3C violated the Fourth Amendment and that the evidence resulting from that search should have been suppressed at trial. Justice Nardelli ruled that exigent circumstances justified the officers' warrantless entry and denied the motions.
 
 
 1
 The appeal of Diaz and Matos was heard by a different panel of the Appellate Division, First Department, than heard Andujar's appeal. The two panels interpreted the ambiguous evidence of the content of the police radio run differently. Andujar's panel understood this evidence as communicating that someone in Apartment 3C had heard shots. Accordingly that panel found no exigent circumstances justifying warrantless entry into the apartment and vacated Andujar's conviction. People v. Andujar, 160 A.D.2d 403, 405, 553 N.Y.S.2d 759, 761 (1st Dep't 1990). In contrast, the panel that heard the appeal of Matos and Diaz understood the evidence as indicating that the shots had been fired in the apartment; it therefore concluded that exigent circumstances justified the entry. The petitioners' convictions were thus affirmed. People v. Mato, 160 A.D.2d 435, 437-38, 554 N.Y.S.2d 121, 124 (1st Dep't 1990).
 
 
 2
 The Appellate Division granted petitioners leave to reargue their appeal, but after reargument the panel adhered to its initial ruling. The New York Court of Appeals denied their applications for leave to appeal. The panel in Andujar denied the State's motion to reargue that appeal.
 
 
 3
 Petitioners thereafter filed these petitions to vacate their convictions. They argued principally that the affirmance of their convictions violated the Equal Protection Clause of the Fourteenth Amendment because they had received different treatment than that accorded to Andujar, who was identically situated. In a Report and Recommendation dated July 31, 1995, Magistrate Judge Barbara A. Lee recommended that their petitions be denied. The Magistrate Judge found that inconsistent outcomes in criminal trials are not unconstitutional unless the process leading to the divergent results involved a constitutional violation. The Magistrate Judge also rejected petitioners' argument that the Equal Protection Clause required the State to ensure uniform outcomes in related criminal appeals by monitoring the assignment and resolution of such cases. On November 14, 1995, Judge Sand adopted and approved the Magistrate Judge's Report and Recommendation.
 
 
 4
 We have reviewed the decision of the district court and find no basis for reversal. The Supreme Court has made clear that the Equal Protection Clause "does not assure uniformity of judicial decisions" or "immunity from judicial error." Beck v. Washington, 369 U.S. 541, 554-55, 82 S.Ct. 955, 962-63 (1962). Indeed, a verdict in a joint trial may treat co-defendants differently. Harris v. Rivera, 454 U.S. 339, 344, 102 S.Ct. 460, 464 (1981).
 
 
 5
 Petitioners have not even shown that, of the two inconsistent appellate decisions, theirs was wrong. Their argument depends on the proposition that a ruling of law that benefits one defendant in a criminal case must be applied to the benefit of all similarly situated defendants, regardless whether the ruling is correct. There is no support in law for such a contention. Id. at 347, 102 S.Ct. at 465(if the court erred in acquitting one defendant, "[t]here is no reason--and surely no constitutional requirement--that such an error
 
 
 6
 ... should redound to the benefit of" his codefendant).
 
 
 7
 The inconsistency, furthermore, did not arise from the application of different rules of law to similarly situated defendants. Both panels applied the same rule. The difference in their rulings resulted from different understandings of ambiguous evidence.
 
 
 8
 The panel that heard petitioners' appeal understood the police officer's testimony about the radio report to communicate that shots had been fired in the apartment. That understanding was reasonable. The mere fact that another panel reached a different (perhaps less reasonable) understanding of the evidence does not entitle petitioners to have their case judged on the basis of the same factual assumptions.
 
 
 9
 Under Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037 (1976), a petitioner who has had full and fair review of his Fourth Amendment claims in state court may not seek subsequent federal review of those claims. We therefore agree with the district court that we may not consider whether petitioners' appellate panel decided their Fourth Amendment claims incorrectly.
 
 
 10
 Finding no merit in petitioners' remaining contentions, we affirm the decision of the district court.