# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,      )
                          )
                          )
        v.             )      I.D. NO. 2005007025
                          )
RYAN THOMPSON,       )
                          )
      Defendant.     )

Submitted: October 14, 2021
Decided: December 20, 2021

*Upon Consideration of Defendant's Motion for Judgment of Acquittal*,
**DENIED**.

*Upon Consideration of Defendant's Motion for a New Trial*,
**DENIED**.

## MEMORANDUM OPINION

Isaac Rank, Esquire, Deputy Attorney General, DEPARTMENT OF JUSTICE, Wilmington, Delaware. *Attorney for the State of Delaware*.

Joseph A. Hurley, Esquire, JOSEPH A. HURLEY LAW OFFICE, Wilmington, Delaware. *Attorney for Defendant Ryan Thompson*.

**BUTLER, R.J.**

The Defendant was tried before a jury of his peers on two charges: driving under the influence of alcohol ("DUI") and driving without a valid license on a public roadway ("NVL"). The jury convicted him of DUI but acquitted him of NVL. He was sentenced immediately. Four days later, his attorney filed a "motion seeking a judgment of acquittal and notwithstanding the verdict." For good measure, he then filed an "alternative motion seeking a new trial." The State has responded and this will be the ruling of the Court.

## BACKGROUND

The evidence presented by the State had the Defendant behind the wheel of a Jeep as it drove at a high rate of speed down a country road. A witness who lived at a bend in the road saw the Jeep round the bend and then heard it crash shortly thereafter. The witness, accompanied by his housemate, went to the field where the vehicle had become disabled in some wire fencing and observed the Defendant engaged in trying to untangle the Jeep from the fencing.

When a state trooper arrived, a police motor vehicle recorder captured a bit of dialogue. The Defendant admitted he had been drinking, but denied driving the Jeep. The officer was unpersuaded, so the Defendant was arrested. The State Chemist testified that a subsequent blood draw performed on the Defendant at the hospital yielded a BAC of 0.18.

There was much trial energy directed to the questions of whether the Defendant was alone, the witnesses were able to see the driver, and the witnesses saw any other people. The witnesses testified that they clearly saw the Defendant driving alone. The Defendant, however, told a different story. He testified that, although the Jeep was registered to him, another person drove it, wrecked it, disabled it, and ran away before anyone saw him, leaving the Defendant to untangle the car from the wire fence and to face his legal difficulty alone.

As noted above, the jury acquitted the Defendant of NVL but convicted him of DUI. Because it will become important later, we will note here that liability for NVL attaches to any driver on a "public roadway" without a valid license, but a DUI charge may attach regardless of whether the operator is on a public roadway, so long as he is in "actual physical control" of the vehicle.

The Defendant argues that the jury, having acquitted him of "driving a motor vehicle on a public highway without a valid license," must have believed he was not driving the Jeep. Since jury "found" that he was not driving the Jeep, the argument goes, he could only be found guilty of DUI if the jury found he was in "actual physical control" of the Jeep and the instruction on "actual physical control" was defective, thus mandating, at a minimum, to a new trial.

## ANALYSIS

It is true that NVL requires that one drive on a public roadway[1] and that DUI requires only "actual physical control" of a vehicle, regardless of where it is.[2] But the question here is not whether inconsistent verdicts can be rendered by a jury. They can.[3] Instead, the question is what to do when that happens.

The Court answered this question just a few weeks ago, albeit on different facts. In *State v. Terreros*,[4] the defendant moved for acquittal after he was convicted on a child sex abuse charge that was inconsistent with his acquittal of First-Degree Rape. The Court held that, unless the charge of conviction statutorily depends for its validity on the acquitted charge, the charge of conviction will stand despite any logical inconsistency so long as the conviction is supported by sufficient evidence and can be attributed to jury lenity.[5] Applying lenity plus sufficiency-of-the-evidence review, the *Terreros* decision upheld the verdict, finding that the inconsistency could be rationalized in a variety of ways that included the jury's possible misapprehension of the penalties associated with the charge of conviction.

---

[1] *See* 21 *Del. C.* § 2701 (2020).
[2] *See id.* § 4177(c)(5).
[3] *E.g.*, *Harris v. Rivera*, 454 U.S. 339, 345–46 (1981) ("Inconsistency in a verdict is not a sufficient reason for setting it aside."); *Dunn v. United States*, 284 U.S. 390, 393 (1932) ("Consistency in a verdict is not necessary."); *Graham v. State*, 2017 WL 4128495, at *2 (Del. Sept. 18, 2017) ("[I]nconsistency alone does not warrant a new trial or reversal.").
[4] 2021 WL 5577253 (Del. Super. Ct. Nov. 29, 2021).
[5] *Id.* at *3–6.

The *Terreros* ruling did not reinvent the wheel. The U.S. and Delaware Supreme Courts have long recognized that jury verdicts often are not logical.[6] But for several reasons, that does not mean those verdicts should be second guessed. Sound prudential[7] and practical[8] considerations counsel against deputizing judges as the thirteenth juror. Likewise, the law's interest in conviction finality, together with trial- and appellate-level safeguards,[9] militates against tossing a valid conviction simply because the jury, for one reason or another, did not follow directions.[10]

---

[6] *See, e.g.*, *United States v. Powell*, 469 U.S. 57, 65–67 (1984); *Tilden v. State*, 513 A.2d 1302, 1304–07 (Del. 1986).

[7] *See, e.g.*, *Yaeger v. United States*, 557 U.S. 110, 124 (2009) (Ascertaining why a verdict is inconsistent "would require speculation into what transpired in the jury room. Courts properly avoid such explorations into the jury's sovereign space, . . . and for good reason. The jury's deliberations are secret and not subject to outside examination." (internal quotation marks and citations omitted)); *Powell*, 469 U.S. at 66 ("[A]n individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake.").

[8] *See, e.g.*, *Grimes v. State*, 188 A.3d 824, 829 (Del. 2018) ("Grimes would have us credit the acquittal over the conviction—treating the acquittal as the jury's true verdict and the conviction as just a windfall to the State at his expense—but as we have recognized, it is equally possible in a scenario like this that the jury, convinced of guilt, properly reached its conclusion on the [conviction], and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the [acquittal]. When a jury produces an irreconcilable verdict, it is unclear whose ox has been gored . . . ." (cleaned up)).

[9] *E.g.*, *Dennison v. State*, 2007 WL 1837004, at *3 (Del. June 25, 2007) ("A criminal defendant is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence by the trial and appellate courts." (alteration and internal quotation marks omitted)).

[10] *See Powell*, 469 U.S. at 65–66 ("[T]he possibility that the inconsistent verdicts may favor the . . . defendant as well as the Government militates against review of such convictions at the defendant's behest . . . . The fact that the inconsistency may

The Defendant's arguments, like those made in *Terreros*, run contrary to these principles. He first assumes the jury is a logical organism. Despite the Court's many instructions, however, only some juries follow logic and common sense to the letter of the Court's instructions. A jury may make findings that are based on sympathy, bias, some of the evidence but not all the evidence, or any other reason upon which they can all agree. The jury room is shuttered and inaccessible; neither the attorneys nor the Court is privy to the jury's deliberations. The Court cannot now invade the jury's province to search for the "true" verdict.[11]

Next, Defendant assumes his NVL acquittal involved a finding by the jury that he was not driving the Jeep, even though he was found in it after it careened around the curve in the road and drove through a wire fence. Thus, according to Defendant's logic, the jury must have believed his testimony that he was not the driver, undermining his DUI conviction. But we might resolve the conundrum in several other ways.

Perhaps the Court should overrule the jury's vote and enter a conviction for NVL. Or maybe the Court should overrule the jury and enter an acquittal for DUI. Or we could engage with the Defendant in his merciless torture of the facts, which

be the result of lenity . . . suggests that inconsistent verdicts should not be reviewable.").

[11] *Cf. Terreros*, 2021 WL 5577253, at *5 ("A court might assume, as the [d]efendant does, that the acquittal is the jury's 'true verdict.' But another court might assume the conviction is the jury's true verdict.").

with phantom drivers bolting from the wrecked car and hiding in the bushes until the police went away. Or, less fantastic, we could conclude the jury did not buy the Defendant's story at all, knew he was the only one in the Jeep, and simply decided to "throw him a bone" by acquitting him on what they correctly presumed was the less serious charge.

In *Terreros*, the Court walked through the two analytical frameworks that may apply to inconsistent verdicts: one for "predicate-compound" verdicts and another for verdicts that are merely inconsistent with each other.[12] Here, we are not confronted with a predicate-compound riddle. Even if both charges share some elements, a NVL conviction is not required as a predicate to a DUI conviction. Not all DUI defendants drive without their license and not all unlicensed drivers drive drunk.

Since the predicate-compound analysis is inapplicable, these verdicts are subject to the lenity plus sufficiency-of-the-evidence standard.[13] On that standard, the Defendant's DUI conviction easily passes muster.

---

[12] *Id.* at *2. *See also State v. Wilkerson*, 2021 WL 4075018, at *2–4 (Del. Super. Ct. Sept. 7, 2021).

[13] *King v. State*, 2015 WL 5168249, at *2 (Del. Aug. 26, 2015) ("Under the rule of jury lenity, [the] Court may uphold a conviction that is inconsistent with another jury verdict if there is legally sufficient evidence to justify the conviction."); *see Powell*, 469 U.S. at 67 ("Sufficiency-of-the evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt. This review should be

A reasonable jury could easily conclude that the defendant was at the wheel of the Jeep when he failed to negotiate a curve in the road, lost control of the vehicle and drove it into a field where it became entangled in wire fencing. When the witnesses arrived at the crash site, the Defendant was busy looking for a "sledgehammer" to remove the wires with. Now, while some might find this perfectly normal, a rational jury might consider it a rather unusual response when the Defendant, thoroughly inebriated, allowed another person to wreck his Jeep, abscond and left him, with his 0.18 BAC and a disabled vehicle. And the fact that he had a BAC of 0.18 was not seriously contested. Indeed, defense counsel repeatedly characterized the Defendant as "drunk as a skunk." A jury could easily have concluded the Defendant was the one and only drunk driver.

When faced with verdict inconsistency, as here, courts frequently attribute the inconsistency to an exercise of "lenity" by the jury. While the only lenity exercised here was relief from a minor traffic fine, an impaired driver wrecking a vehicle, in this day and age, can hardly expect to face a jury of his peers and get sympathy. Nevertheless, the jury's verdicts can stand where they evince some form of compromise. The Court need not pry any further.[14] Assuming that the verdicts were

---

independent of the jury's determination that evidence on another count was insufficient." (citations omitted)).

[14] *Dunn*, 284 U.S. at 394 ("That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters.").

indeed inconsistent, the evidence was sufficient to sustain a conviction for DUI and the jury's view of the NVL charge does not make a difference.

Finally, as to the complaint of a defective "actual physical control" instruction, the Court notes that defense counsel had the draft instruction for two days before agreeing to it. That aside, the Defendant's belated complaint, at this late stage, is merely an attempt to reintroduce through the backdoor of his second motion the same arguments he made in his first about why the jury's logic must be based on an impermissible mistake. Because the Court has found no merit in that theory, it is rejected here for the same reasons.

## CONCLUSION

For the foregoing reasons, the Defendant's two motions are **DENIED**.

**IT IS SO ORDERED**.


Charles E. Butler, Resident Judge