**Application of WASHINGTON POST COMPANY.**

**Misc. No. 83–200.**

United States District Court, District of Columbia.

June 28, 1983.

Kevin T. Baine, Williams & Connolly, Washington, D.C., for petitioner.

Asst. U.S. Atty. William H. Briggs, Jr., Washington, D.C., for respondent.

## MEMORANDUM ORDER

JOHN GARRETT PENN, District Judge.

This comes before the Court on the Application of the Washington Post to unseal portions of transcripts of three bench conferences in the case of *United States v. Treadwell*, 566 F.Supp. 80 (D.D.C.1983), presently in trial.[1] The portions of the transcript which were sealed consist of a bench conference held on June 16, 1983 and two held on June 21, 1983. Subsequent to the filing of the application, two additional bench conferences were placed under seal, those conferences being held on June 24, 1983. All bench conferences relate to the same matter and the Court treats the application as requesting the unsealing of the transcripts of all five bench conferences.

### I

Before addressing the merits of the application, and in order to place the application for unsealing of the record in context, it is necessary to briefly set forth the history of the related case. On February 22, 1982, an indictment was filed against Mary Treadwell, Robert E. Lee, Joan M. Booth, Charles W. Rinker, Jr. and Ronald S. Williams. Thereafter, Mr. Lee, Mr. Williams and Ms. Booth entered guilty pleas to portions of the indictment, and the charges against Mr. Rinker were dismissed by the government. The only remaining defendant is Mary Treadwell and her trial began on May 31, 1983, when the Court began the jury selection process. Voir dire was completed on June 7, 1983 and a jury of twelve

---

1. The Washington Post filed a Motion to Intervene in the criminal· case, however, as is the practice in this court, the motion was assigned a miscellaneous number and filed as a separate matter. *See e.g., Application of National Broadcasting Co.*, 209 U.S.App.D.C. 354, 653 F.2d 609 (1981). Therefore the Motion to Intervene is moot.

regular jurors and six alternate jurors was selected and sworn on June 8, 1983.[2] Opening statements were made the same day.

The defendant is charged with conspiracy, false statements, mail fraud[3], wire fraud and tax evasion which allegedly occurred when she was the director and/or chief executive officer of various organizations including P.I. Properties, Inc., Pride International, Inc., Sticks and Stones, Inc., Youth Pride Economic Enterprises, Inc., Pride Economic Enterprises Special Police, Pride Environmental Services, Inc., T. Barry Associates, Inc. and Youth Pride, Inc. The indictment charges that the defendant and others, including Lee, Booth, Rinker and Williams, conspired to commit a number of offenses against the United States and that the object of the conspiracy was to use P.I. Properties, a nonprofit organization, to acquire Clifton Terrace, and to thereafter misappropriate, misapply, divert, and steal monies and assets from Clifton Terrace and other housing projects owned or managed by P.I. Properties.

Ms. Treadwell is the former wife of the present Mayor of the District of Columbia, Mayor Marion Barry. She is also the former wife of Ronald Williams, and the sister of Joan Booth, alleged co-conspirators. Because of this and because the Pride organization and the Clifton Terrace project have generated considerable publicity over the past several years, it was necessary to call a jury panel of 175 potential jurors for possible selection as jurors in this case. Since there has been so much publicity concerning this case, and since heavy press and media coverage was expected during the trial, it was also necessary to consider the possibility of sequestering the jury and a large number of the panel were excused because, for one reason or another, they were unavailable to sit as members of a sequestered jury. Other jurors were eliminated because they were not reasonably available to sit as jurors in a trial which might take six or more weeks.

The Court and counsel conducted a very careful individual voir dire of the members of the jury panel in order to select a fair and impartial jury to hear this case. As noted, the parties expect that this trial will last six weeks or more excluding the time that was necessary to select the jury. Since the trial has begun, the Court has carefully monitored the local newspapers, and to the extent possible, radio and television coverage of the case. The case has received heavy coverage in the press and media. The jury is regularly admonished concerning reading, listening to and looking at any accounts of the trial or anything which may concern the case, the parties, the witnesses, the housing projects or counsel in the case.

## II

"Absent an overriding interest articulated in findings, the trial of a criminal case must be open to the public." *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 581, 100 S.Ct. 2814, 2829–2830, 65 L.Ed.2d 973 (1980).[4] It is also well settled that representatives of an excluded group must be given the opportunity to present the grounds for their objection to exclusion. *Globe Newspaper Co. v. Superior Court for the County of Norfolk,* 457 U.S. 596, 102 S.Ct. 2613, 2622 n. 25, 73 L.Ed.2d 248 (1982), citing *Gannett Co. v. DePasquale,* 443 U.S. 368, 401, 99 S.Ct. 2898, 2916,

---

**2.** One regular juror has since been excused due to a serious family illness and has been replaced by an alternate.

**3.** All mail fraud charges have since been dismissed.

**4.** In *United States v. Brooklier,* 685 F.2d 1162, 1172 (9th Cir.1982), the court held that the right of the public to open trials extends to transcripts of closed proceedings, and, thus, the denial of release of the transcript must be tested under the same standard and must satisfy the same procedural prerequisites as the initial closure. Here, however, the initial closure cannot be contested. *See Richmond Newspapers,* 448 U.S. at 598 n. 23, 100 S.Ct. at 2839 n. 23 (Brennan, J., concurring). Nevertheless, the Court finds that the decision to seal the bench conferences must comport with the principles of *Richmond Newspapers.*

61 L.Ed.2d 608 (1979) (Powell, J., concurring).

■ But, the right of access to the proceedings in court is not absolute. *Richmond Newspapers*, 448 U.S. at 581 n. 18, 100 S.Ct. at 2830 n. 18; *Gannett Co.*, 443 U.S. at 398, 99 S.Ct. at 2915 (Powell, J., concurring). The trial judge may employ his/her discretion to impose reasonable restrictions to preserve the fair administration of justice, including the exclusion of the public and press from conferences at the bench and in chambers. *Globe Newspaper Co.*, 102 S.Ct. at 2622 n. 25; *Richmond Newspapers*, 448 U.S. at 598 n. 23, 100 S.Ct. at 2839 n. 23 (Brennan, J., concurring).

■ Most importantly, access to the proceedings is limited by defendant's constitutional right to a fair trial and the government's need to obtain just convictions. *Gannett Co.*, 443 U.S. at 398, 99 S.Ct. at 2915 (Powell, J., concurring).

### III

The Court finds as follows:

1. At the time the transcript was sealed on motion, the Court very briefly set forth the reasons why it concluded that it was necessary to seal the transcript.

2. The portions sealed have been ordered sealed only until after the jury reaches its verdict in the case, and at that time the sealed portions of the transcript shall be automatically unsealed without the necessity for a further order by the Court. *See Gannett Co.*, 443 U.S. at 393, 99 S.Ct. at 2912 ("[A]ny denial of access in this case was not absolute but only temporary. Once the danger of prejudice had dissipated, a transcript of the ... hearing was made available.")

3. The sealed portions of the transcript are not evidence in the case and would not be admissible as evidence in the case since they are not related to any issue presently before the Court. *See Application of the*

*National Broadcasting Co.*, 209 U.S.App. D.C. 354, 653 F.2d 609 (1981).[5]

■ 4. The nature of the bench conferences in question were such that they would usually be conducted out of the hearing of the public and press. Conferences of this sort "are distinct from trial proceedings", *Richmond Newspapers*, 448 U.S. at 598 n. 23, 100 S.Ct. at 2839 n. 23, and, therefore, the public's right to participate in the administration of justice was not infringed to the extent it would be if they are excluded from the trial.

5. Disclosure of the sealed conferences would in all probability have a prejudicial effect on the jurors and witnesses in this case.

6. Although sequestration of the jury is often mentioned as a remedy in such cases, and while as noted above, all jurors have been alerted to that possibility, sequestration would be extremely expensive and time consuming and, at this point in the trial, may well result in prejudice to a party or parties. Moreover, sequestration may result in a delay of the trial while sequestration is being arranged. Sequestration would be expensive, requiring the renting of a portion of a hotel or motel, the transportation of jurors to and from the courthouse, the feeding of jurors, and transporting jurors for necessary errands including such matters as medical appointments, banking, and so forth. Furthermore, sequestration is very disruptive of the juror's life and would impose an unnecessary hardship on the jurors, resulting in possible prejudice to the parties. It would also be difficult to sequester jurors because the area is now in the height of the tourist season and hotel or motel accommodations are at a premium. Finally, while accommodations can be ultimately obtained, there is, as noted above, the effect sequestration of the jury would have at this time.

■ It is the judgment of the court and of counsel representing both the Govern-

---

5. It must be emphasized that the sealed portions of the transcript are not remotely relevant to any issue in this case. It has no probative value, but in the opinion of the Court, if released, could be prejudicial to the parties. *See e.g.,* Fed.R.Evid. 403.

ment and the defendant, that the limited sealing of the five bench conferences, consisting of less than 20 pages of transcript, out of the over 4,000 pages of transcript that have already been taken, is the least restrictive alternative in this case. The transcript has not been sealed for any longer than is necessary to achieve the purpose for the sealing, that is, to assure the parties of a fair and impartial trial. The transcript will be automatically unsealed when the verdict has been returned by the jury. The limited sealing order by the court has the effect only of *delaying* the release of the transcript to the public for a period of not more than two or three weeks, keeping in mind that the Government rested its case on June 24, 1983, and the defense is to begin its case on June 27, 1983. Weighing the public's right to know the contents of the sealed portion of the proceedings against the possible prejudice to the defendant, or the Government, and the administration of justice, the scale overwhelmingly tips towards the Court's decision to seal the transcript of the bench conferences indicated.

In view of the above, it is hereby

ORDERED that the Application of the Washington Post Company to unseal the transcript of the five described bench conferences is denied, and it is further

ORDERED that those five portions of the transcript shall remain sealed until the jury in this case is discharged, and in that event, the transcript shall be unsealed without further order of the Court.[6]

---

6. Under Seal.