Clark M. CLIFFORD and Robert
A. Altman, Appellants,

v.

UNITED STATES of America,
et al., Appellees.

No. 96–5317.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 12, 1997.

Decided Feb. 17, 1998

Timothy J. Preso, Washington, DC, argued the cause for appellants, with whom William H. Jeffress, Jr., Martin D. Minsker and Douglas F. Curtis were on the briefs.

Marc J. Gottridge, New York City, argued the cause for appellees, with whom Sol Neil Corbin, New York City, Stephen J. Brogan, Eric L. Lewis and Michael Nussbaum, Washington, DC, were on the brief for appellees First American Bankshares, Inc., et al.

Mary Lou Leary, U.S. Attorney, Washington, DC, at the time the brief was filed, Michele L. Crawford, Trial Attorney, and Stefan D. Cassella, Assistant Chief, U.S. Department of Justice, were on the brief for appellee United States of America.

Before: WILLIAMS and ROGERS, Circuit Judges and BUCKLEY, Senior Circuit Judge.

ROGERS, Circuit Judge:

Appellants, Clark M. Clifford and Robert A. Altman, appeal an order of the district court denying access to certain sealed documents and transcripts of *in camera* conferences between the judge and a court-appointed trustee in the course of an ongoing criminal forfeiture proceeding. Appellants are not party to that proceeding, but are involved in several civil actions pending before the same judge as adversaries to the parties appearing in the criminal matter. Appellants contend that the communications between the trustee and the judge relate to their concurrent civil cases and that due process requires that they be notified and provided with copies of any such communications. Because appellants have failed to provide sufficient evidence to overturn the district court's finding that the submitted information did not involve matters directly related to the civil litigation, and because their other grounds for access to the sealed documents, rooted in the equitable principles of trust law, are unpersuasive, we affirm.

## I.

This appeal involves a subsidiary dispute arising out of the lengthy and ongoing legal proceedings involving the Bank of Credit and

Commerce International ("BCCI") and the related activities of its officers, directors, and shareholders. Suffice it to say for purposes of the instant appeal that BCCI pled guilty to several state and federal charges, including conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO") by illegally acquiring a controlling interest in First American Bankshares, Inc. ("FAB") and First American Corporation ("FAC") (collectively "First American"). *See* 18 U.S.C. § 1962(c), (d) (1988). As a result, pursuant to an agreement between BCCI and the United States, the district court ordered the forfeiture of all of BCCI's property in the United States, including whatever interest it may have had in First American. As relevant here, the court ordered the forfeiture of "the net proceeds from the future sale or other disposition or transfer of any stock, security or other interest in First American Bankshares, Inc., but not the stock, security or other interest itself."

Executing this forfeiture agreement proved to be complicated due to the nature of the conspiracy. BCCI did not directly own any interest in First American. Rather, through intermediaries, it acquired a controlling interest in a Netherlands Antilles corporation, Credit and Commerce American Holdings, Inc. ("CCAH"). The extent of this interest was uncertain at the time of the forfeiture order but has been subsequently calculated to amount to 61.156%. Other shareholders in CCAH included appellants Clifford and Altman, whose shares have been estimated at 0.828% and 0.414% respectively. In turn, CCAH owned a subsidiary corporation, Credit and Commerce American Investment ("CCAI"), which owned FAC, which owned FAB.

Faced with this tangle of interlocking subsidiary corporations, the United States decided that the best course for recovering its forfeited interest was to dissolve First American and liquidate its assets. To facilitate the process, the government proposed the appointment of a trustee under 18 U.S.C. § 1963(e) and developed a plan whereby CCAH would transfer all of its interest in

First American to the trustee, who would "have all rights, titles, powers, and privileges of a shareholder of FAC, including ... the right to exercise exclusively any and all voting rights and any other rights or benefits attached to ... the FAC shares." According to the plan, once the trustee completed the sale of First American, the district court would order the equitable distribution of the net proceeds (after payment of expenses) to the United States and any outstanding shareholders of CCAH.[1] Because BCCI was not the sole shareholder of CCAH, the government needed to win the approval of others to muster the 75% share vote necessary for the plan to take effect, and on May 12, 1992, CCAH's shareholders, including Clifford and Altman, approved the proposed transaction. Subsequently, the district court appointed a trustee and required him to prepare quarterly progress reports.

The trustee successfully completed the sale of First American's assets, and in October 1994 filed a motion seeking a "Procedural Order" on the procedures he should follow in dissolving the corporation, completing its liquidation, and distributing the proceeds. Following a public hearing on December 19, 1994, the court, by order dated two days later, directed the trustee to obtain lists of all proceedings and claims against First American, the amounts estimated as appropriate to reserve for payment for each, and estimated associated expenses, and to file these documents under seal.

Meanwhile, several civil lawsuits involving appellants Clifford and Altman began to unfold. Appellants had served in various capacities for BCCI prior to its legal difficulties. In addition to owning shares in CCAH, they had also served as directors and officers of CCAH, CCAI, and First American and as legal counsel for BCCI and First American. On June 24, 1993, the trustee, on behalf of First American, filed suit against several defendants, including Clifford and Altman, for their participation in the acquisition of First American by BCCI, alleging violations of RICO, common law fraud, breach of fiduciary duty, and conspiracy. *See First Am. Corp. v.*

---

1. Any shareholder or other party who wished to contest the government's share could intervene in the distribution proceedings under 18 U.S.C. § 1963(*l*).

*Al–Nahyan*, No. 93–1309 (D.D.C. filed June 24, 1993). Similarly, on July 1, 1994, BCCI's fiduciaries filed suit alleging that Clifford and Altman (as well as their former law partners) had breached their fiduciary duties and improperly represented both BCCI and First American during their financial dealings despite conflicts of interest. *See BCCI Holdings, S.A. v. Clifford,* 964 F.Supp. 468 (D.D.C.1994). Both lawsuits are currently pending before the same judge who is presiding over the criminal forfeiture proceedings.

Appellants have also filed several civil lawsuits of their own. In March 1995, appellants filed a claim in the federal court in the Eastern District of Virginia for indemnification from First American. *See Clifford v. First Am. Corp.,* No. 95–377–A (E.D. Va. filed Mar. 24, 1995). They sought reimbursement, as officers and directors of First American, for legal fees incurred in the successful defense of criminal charges that had been brought against them in New York.[2] This lawsuit was ultimately transferred to the District Court for the District of Columbia and assigned to the same judge. *See Clifford v. First Am. Corp.,* No. 95–877 (D.D.C. filed May 10, 1995). In September 1995, appellants filed another indemnification suit in federal court here against First American, seeking reimbursement for the defense of the civil claims brought against them by BCCI and First American and an administrative action being pursued by the Federal Reserve Board. *See Clifford v. First Am. Corp.,* No. 95–1689 (D.D.C. filed Sept. 5, 1995). That lawsuit has been stayed pending the outcome of the other civil lawsuits currently before the district court.

In the instant case, appellants filed a motion on November 13, 1995, to intervene in the criminal proceeding against BCCI for the "limited purpose of obtaining disclosure of information that has been communicated to [the district court] by parties … [or] the First American Trustee … and that may be communicated in the future." Asserting that several communications between the trustee and the judge in the course of the forfeiture proceedings related to their concurrent civil litigation, appellants requested notes of a November 16, 1992, *in camera* discussion among the judge, the trustee, and counsel for both BCCI's fiduciaries and the United States.[3] This off-the-record conference was prompted by remarks made by counsel for the BCCI fiduciaries that he wished to discuss "a future piece of litigation." Appellants maintain that this remark, as well as other statements made by the prosecutor, were meant to refer to the *Al–Nahyan* action and the BCCI suit that was later filed against them.

Appellants also object to their lack of access to certain material contained in a sealed report filed by the trustee in July 1995.[4] Pursuant to the Procedural Order, the trustee submitted a "Report on the First List of Claims and Contingencies of First American" containing a list of pending legal proceedings and claims asserted against the corporation, including the various actions involving appellants. This document, placed in the public record and obtained by appellants, referred to another report filed under seal with the court at the same time that included First American's "Reserve Lists" and "Expense and Indemnity List" as required by the Procedural Order. Upon reviewing the public report, appellants requested a copy of the sealed document from the trustee. When their request was refused, appellants moved to intervene in the criminal proceeding to

---

**2.** For a summary of the disposition of the criminal cases against appellants, see *People v. Abedi,* 159 Misc.2d 1010, 607 N.Y.S.2d 862 (N.Y.Sup. Ct.1994).

**3.** On appeal, appellants also mention a second *in camera* conversation between the trustee and the judge that occurred after the hearing on the proposed Procedural Order on December 19, 1994. This communication was not identified in appellants' motion to intervene in the district court. There is no indication that this conference concerned appellants; the judge merely invited the trustee into her chambers to discuss "other[ ] matters."

**4.** Appellants further object to the treatment of other communications that were not filed under seal: the trustee's "Second Interim Report on Trust Activities," filed May 15, 1995, and his "First List of Claims and Contingencies," filed July 19, 1995. Because these documents were available in the public record, appellants' only contention appears to be that they were not served with copies of the reports.

gain access to the sealed report and any other sealed documents submitted to the court that referred to their civil lawsuits. They also requested that they be notified and served with copies of any future filings that relate to pending civil lawsuits in which they are parties. In opposing appellants' motion, the trustee revealed that the sealed report contained "brief explanatory narrative[s] describing the nature and status of pending claims and proceedings" as well as the required lists of reserves maintained by First American for each outstanding claim. Appellants rely on this revelation to support their contention that the communications between the trustee and the judge addressed the merits of their claims.

Denying the motion to intervene in the criminal proceeding without comment,[5] the court, *sua sponte,* treated the motion as if it had been "properly filed as a miscellaneous case under Local Rule 307.1." *See* D.D.C. R. 307.1. The court ruled that appellants had waived their objections to the Procedural Order and, therefore, could not seek disclosure of the sealed reports. The court further found that "disclosure is ... inappropriate because the material filed under seal, or to be filed under seal, involves matters not directly related to [the] civil litigation." The court also denied appellants' request for transcripts of the *in camera* discussions because they "did not involve the merits of any litigation filed by, or against, Clifford and Altman."

We review the district court's refusal to disclose the sealed documents and any *in camera* discussions for abuse of discretion. *Cf. EEOC v. National Children's Ctr., Inc.,* 98 F.3d 1406, 1409 (D.C.Cir.1996); *In re*

*National Broadcasting Co.,* 653 F.2d 609, 613 (D.C.Cir.1981)

## II.

Complex litigation may often require the district court to consider facially conflicting claims against some or all of the parties involved in the initial underlying litigation. As a matter of court management and efficiency, the assignment of related matters to a single judge is preferred. *See* D.D.C. R. 405. Indeed, the courts have developed rules and presumptions that enable the most efficient use of limited judicial resources while at the same time protecting the various parties' rights to have their claims and arguments heard and decided by an impartial decision-maker. Trial judges frequently receive extraneous information about parties appearing before them but are presumed to disregard it. *See Harris v. Rivera,* 454 U.S. 339, 347, 102 S.Ct. 460, 465, 70 L.Ed.2d 530 (1981). In the course of a trial, as well as at pre-trial suppression hearings or during discovery, a judge may inspect documents or evidence that go to the heart of a party's case but are ultimately determined to be inadmissible. *See United States v. Cowden,* 545 F.2d 257, 265–66 (1st Cir.1976) (recognizing that judges "are necessarily exposed to [matters outside the record] in the course of ruling on the admission of evidence"). Similarly, a judge may have personal experience with particular parties who have appeared before her in previous cases, or she may have learned about underlying events by presiding over related trials. *See id.* Yet such prior knowledge does not, by itself, generally raise questions about the fairness of a judge.[6] *See Liteky v. United States,* 510 U.S. 540, 550–51, 555, 114 S.Ct.

---

5. Appellants do not appeal the formal disposition of their motion to intervene in the criminal proceedings. Therefore, we need not address the proper procedural mechanism for non-parties to seek disclosure of documents sealed in a criminal trial. *See United States v. Hubbard,* 650 F.2d 293, 308–13 (D.C.Cir.1980); *In re Application of Washington Post Co.,* 576 F.Supp. 76, 77 n. 1 (D.D.C.1983).

6. Of course, if a judge's personal knowledge rises to the level where it creates the appearance of bias or prejudice, then the judge's recusal is required under 28 U.S.C. § 455. *See Liteky v.*

*United States,* 510 U.S. 540, 548, 554–56, 114 S.Ct. 1147, 1153, 1156–58, 127 L.Ed.2d 474 (1994); *see also* MODEL CODE OF JUDICIAL CONDUCT Canon 3E(1) (1990). But, in the instant case, appellants have not sought the disqualification of the district court judge, nor do they claim that her communications with the trustee have actually affected her impartiality. Hence, we have no occasion to consider the circumstances under which a judge performing both administrative and judicial functions over related cases should transfer one or both of the cases to another judge.

1147, 1154–55, 127 L.Ed.2d 474 (1994); *United States v. Roach,* 108 F.3d 1477, 1484 (D.C.Cir.1997); *Paradis v. Arave,* 20 F.3d 950, 956–57 (9th Cir.1994). Judges are presumed to be able to compartmentalize the information they receive and only rely on evidence relevant for a particular decision. *See Harris,* 454 U.S. at 346, 102 S.Ct. at 464–65; *United States v. Menk,* 406 F.2d 124, 126–27 (7th Cir.1968); *In re M.D.J.,* 346 A.2d 733, 736 (D.C.1975).

Still, the instant case appears somewhat unusual in that a single district court judge is presiding over a civil lawsuit (and other related civil lawsuits) while at the same time superintending the administration of a criminal forfeiture proceeding arising out of the same operative facts and involving some of the same parties. From their perspective as litigants in the civil lawsuits, appellants view the sealed reports filed by the trustee and his other discussions with the judge in the criminal proceeding as ex parte communications. They contend that these communications create an unfair advantage for the trustee in the civil litigation, or at the very least the appearance of unfairness, and violate the "fundamental concepts of fairness and equity embodied in the due process clause of the Fifth Amendment." Without seeking recusal of the judge, they maintain that due process requires that they receive notice of, and access to, any submissions by their adversaries so that they may have an "opportunity to know the claims of the opposing party and to meet them." *Morgan v. United States,* 304 U.S. 1, 18, 58 S.Ct. 773, 776, 82 L.Ed. 1129 (1938).[7]

■ Appellants' contentions overstate the strength of their due process claim. Even within the context of a single adversary proceeding, communications between a judge and one party are not per se deprivations of the due process rights of the opposing party,

see *In re Paradyne Corp.,* 803 F.2d 604, 612 (11th Cir.1986), and consequently, not all ex parte communications must be disclosed, particularly when there is a countervailing need for confidentiality. Due process concerns about the effect of such communications on the fairness of a trial as a whole are further mitigated where, as here, the trial is before a jury and the judge is not the ultimate finder of fact.[8] *See United States v. Sepulveda,* 512 F.Supp. 592, 594 (D.D.C.1981); *cf. United States v. Robin,* 553 F.2d 8, 10 (2d Cir.1977) (per curiam).

■ Ex parte submissions are permissible to determine whether documents sought by a party enjoy a privilege against discovery, see *In re Application of Eisenberg,* 654 F.2d 1107, 1112 (5th Cir. Unit B 1981); *cf. Kerr v. United States Dist. Court,* 426 U.S. 394, 405, 96 S.Ct. 2119, 2125, 48 L.Ed.2d 725 (1976), "to prevent frustration of a statutory purpose to limit access to Government papers," *In re Taylor,* 567 F.2d 1183, 1188 (2d Cir.1977), or "to resolve fears of intimidation of a witness," *In re Paradyne Corp.,* 803 F.2d at 612. Due process, however, requires that a party be aware of and allowed to refute "the evidence against the *merits* of his case." *In re Eisenberg,* 654 F.2d at 1112 (emphasis added). Thus, in *Rushen v. Spain,* 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) (per curiam), the Supreme Court "emphatically disgree[d]" with the Ninth Circuit's conclusion that an unrecorded ex parte communication between the judge and a juror in a criminal trial can never be harmless error. *Id.* at 117, 104 S.Ct. at 454–55. Instead, the Court took the position that, while an ex parte communication relating to "some aspect of the trial ... generally should [be] disclose[d] ... to counsel for all parties," *id.* at 119, 104 S.Ct. at 456, the particular ex parte communication in

---

7. When concerns arise over the effects of ex parte communications on the fairness of a trial, prejudiced parties ordinarily seek either a remand for a new hearing, *see, e.g., Strang v. United States Arms Control & Disarmament Agency,* 920 F.2d 30, 32 (D.C.Cir.1990) (per curiam), or reassignment of the case to a different judge, *see, e.g., Edgar v. K.L.,* 93 F.3d 256, 262 (7th Cir. 1996); *United States v. Microsoft Corp.,* 56 F.3d 1448, 1465 (D.C.Cir.1995). Appellants, however,

merely request disclosure as a remedy for the alleged denial of due process.

8. Indeed, the fact that three of the civil lawsuits have recently been assigned to a mediator, with the fourth likely soon to follow, further reduces the relevance of appellants' concerns about the effect of these communications on the fairness of their trials.

question was "innocuous" because the judge and juror "did not discuss any fact in controversy or any law applicable to the case," *id.* at 121, 104 S.Ct. at 457. The Court saw no reason to dispute the trial judge's affirmation at a post trial hearing that the ex parte communications "lacked any significance" and that no prejudice had resulted. *Id.* at 116, 104 S.Ct. at 454.

■ Although *Rushen* was somewhat different from the instant case, in that it involved the charge that the judge's contact with a juror may have prejudiced the juror, the Court's approach to ex parte communications is instructive. Thus, when a party conveys ex parte information to a judge that relates to a pending case, courts presume that the trial judge, who is in the best position to evaluate the information, can adequately determine whether such communications go to the merits of the case and promptly stifle them or require disclosure when necessary. *See id.* at 120, 104 S.Ct. at 456–57. Without such a presumption, the process for handling litigation would become inordinately complex, occasioning additional delays and encumbering burdened trial judges with piecemeal responsibilities incompatible with the necessities of efficient trial management. *See generally* Civil Justice Reform Act of 1990, 28 U.S.C. §§ 471–473 (Supp. IV 1992).

■ Here, the judge received information from the trustee that she had already deemed sufficiently sensitive and confidential so as to warrant precluding public disclosure. The judge found that the contents of these communications did not concern the merits of appellants' pending civil actions. It is appellants' burden to offer some evidence that would cast serious doubt on this finding, *see United States v. Taylor,* 997 F.2d 1551, 1553 (D.C.Cir.1993); *cf. United States v. Pollard,* 959 F.2d 1011, 1031 (D.C.Cir.1992) (respecting trial judge's personal knowledge of the existence of ex parte submissions), and yet, upon examination, their contentions amount to little more than surmise and speculation.

Accordingly, we defer to the trial court's factual determination.

The sealed trustee reports sought by appellants primarily contain lists of the amounts placed on reserve by First American to cover their expected liabilities and expenses in the various civil lawsuits still pending. This information has no apparent bearing on the merits of those lawsuits, for as the trustee explained to the district court, the amounts placed on reserve equal the full amount of pending claims and "reflect nothing about [First American's] judgment on the merits of various actions." These amounts, therefore, were already known by appellants, as they readily admit, as well by the court.

Nevertheless, appellants contend that "it is not the reserve figures themselves, but the narratives supplied by First American to accompany the reserves, that Messrs. Clifford and Altman seek." [9] But this position is no more persuasive. There is nothing to suggest that these brief "narratives" do anything more than explain the nature and status of pending claims and proceedings by or against First American, including the civil lawsuits to which appellants are parties. The judge presumably already has knowledge of the progress of these lawsuits, since she is presiding over them. Indeed, if the Second Interim Report filed by the trustee on May 15, 1995, is any indication of the content of these "narratives," appellants' speculations are unfounded. Appellants rely on this publicly docketed report as evidence of improper communications between the trustee and the judge because it contains a discussion of the *Al–Nahyan* litigation in which appellants are defendants. This report, however, merely discusses the facts surrounding several settlements negotiated by First American with defendants other than appellants. In passing, the report only mentions without elaboration that the claims against appellants are still outstanding and that motions to dismiss the claims were pending before the court. Nothing in the report even approaches a discussion of the law or facts relevant to appellants' lawsuits, and there is nothing to

**9.** Appellants' original motion to intervene requested disclosure of the sealed reports before

they knew of the existence of the narratives.

suggest that the "narratives" in the sealed reports are more substantive.[10]

Appellants' assertions regarding the *in camera* conversations among the judge, the prosecutor, BCCI fiduciaries' counsel, and the trustee are even more speculative. On November 16, 1992, counsel for the court-appointed BCCI fiduciaries rather cryptically requested to speak off the record about "a future piece of litigation." At the same hearing, the prosecutor later remarked that the trustee also "wishes to raise a matter best made on the record and under seal." [11] The judge decided to "talk in chambers, not even on the record" about both issues. From these brief statements, appellants somehow draw the inference that the matters discussed involved themselves. Yet the BCCI fiduciaries did not file suit against appellants until July 1, 1994—over one and a half years after this conference—and the trustee did not commence the *Al–Nahyan* lawsuit until June 24, 1993. Consequently, there is scant evidence to suggest that the alleged ex parte communications even related to appellants' currently pending civil lawsuits. There is no evidence to suggest, moreover, that any participants in these communications failed to exercise care in speaking of pending matters; to the contrary, the record shows that the trustee made this concern clear, and the experienced trial judge is entitled to this court's deference in that regard. *Cf.* D.D.C. R. 307(a) (recognizing the propriety of "conferences in chambers" and "other matters normally handled in camera").

■■ Finally, appellants contend that, regardless of their access to the sealed documents, at a minimum they should have been notified (and should be notified in the future) of any documents submitted to the judge that relate to their pending civil lawsuits. Specifically, they take issue with the absence of personalized notice after the filing of the Second Interim Report by the trustee. Although this report was not placed under seal, they consider it to be an ex parte communication. Due process, they contend, requires them to be given notice of such submissions. Appellants are mistaken. Since these submissions are open for public inspection, they do not create the appearance of unfairness or bias that motivates concerns over ex parte communications. Appellants may obtain copies of these documents, as they already have done, and if they conclude that the submissions are prejudicial to them in concurrent lawsuits, appellants, represented by able counsel, doubtless are aware of appropriate

10. Appellants' position with respect to the sealed reports is further weakened by their failure to take advantage of notice of the trustee's motion to enter the Procedural Order. Prior to the hearing on the order, appellants' counsel had received courtesy copies of the trustee's motion and the proposed order. Appellants were thus aware that, as paragraph 6 of the order detailed, certain reports would be sealed and that those reports would contain information relating to claims asserted by or against First American, including "Reserve Lists," an "Expense and Indemnity List," and comments by the trustee. Yet appellants acknowledge that they failed to make any appearance at the hearing, which was scheduled on the public docket, or file a written opposition. Hence appellants' contention that they could not have waived their alleged right to challenge the sealing of the reports because they were not directly notified that the hearing had been scheduled is unpersuasive.

Furthermore, by the time of the hearing, the *Al–Nahyan* and BCCI actions had already been filed against appellants, and appellants apparently had already decided to pursue indemnification for the costs of their criminal defenses. *See Mem. in Reply to Opp'n to Mot. Relating to Indemnification* at 1–2, *United States v. BCCI Hold-*

*ings, S.A.,* No. 91–0655 (D.D.C. filed Nov. 15, 1991). Therefore, by that date if not before, appellants should have been alerted to the sensitive nature of the information to be placed under seal. Indeed a passage in a memorandum in support of appellants' motion for indemnification filed in the criminal proceeding indicates that appellants were fully aware of the possible effects of the proposed Procedural Order even before they received copies of it. *See Mem. in Reply to Opp'n to Mot. Relating to Indemnification, supra,* at 12–13. They had requested a hearing on the "procedural scheme" being considered by the judge because it would "obviously have a significant impact" on their "interests." *Id.* Thus, under these circumstances, the judge could properly find that appellants had made a knowing and intelligent waiver of any right they may have had to obtain access to the sealed reports. *See Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

11. On appeal, First American maintains that the trustee's information concerned his decision to replace the Chairman and Board of Directors of First American later that day and thus did not involve appellants. While plausible, this explanation is without record support.

action that can be taken. Admittedly, the burden of vigilance is on appellants, but due process does not require that they be served with copies of these documents or otherwise personally notified by the judge. If it did, any other non-party whose interests could be affected by a case would have the same right to personal notice. The mere fact that appellants are engaged in concurrent civil litigation with the trustee does not differentiate them in this regard from other interested parties. This claim serves appellants no better than the others.

### III.

■ Appellants alternatively contend that they are entitled to inspect the sealed financial reports submitted by the trustee because they are beneficiaries of the trust he administers. According to the equitable principles of trust law, a "trustee is under a duty to the beneficiary to give him upon his request ... complete and accurate information as to the nature and amount of the trust property." RESTATEMENT (SECOND) OF TRUSTS § 173 (1957). This requirement is designed to ensure that the beneficiary receives any information necessary to protect his rights under the trust. *See id.* § 173 cmt. c. Appellants maintain that, as shareholders in CCAH, they (along with the United States government) are among the ultimate beneficiaries of the trustee's sale of First American. Appellants and the other CCAH shareholders agreed to transfer all of the interest in First American held by CCAH's subsidiary, CCAI, to the trustee. The proceeds of the liquidation of First American not attributable to BCCI's interest in CCAH will be distributed to appellants in proportion to their ownership interest in CCAH. Thus, they argue, the trustee is holding their interest in First American in trust for them as legal beneficiaries.

This contention fails for several reasons. If appellants were beneficiaries of the trust, it would appear to be improper for them to demand access to sealed court files. As they readily concede, "the law of trusts typically would require a beneficiary to seek access to the records of the trust from the trustee, rather than the Court." Appellants contend, however, that their request is properly before the court because the trustee, relying on the Procedural Order for support, has already rejected their request. Still, appellants did not file a motion to compel or a separate action for an accounting in response to this rejection. Nor have appellants alleged any wrongdoing on the part of the trustee, such as a breach of his fiduciary duties, to support such an action. *See, e.g., Strauss v. Superior Court,* 36 Cal.2d 396, 224 P.2d 726, 730–32 (1950) (en banc). Furthermore, even as beneficiaries of the trust, appellants would not, presumably, be entitled to transcripts of the *in camera* conferences.

Finally, as beneficiaries of the property administered by the RICO trustee, appellants would not be entitled to access to the sealed reports. By their own admission, they have already received all of the financial information they would require about the nature and amount of trust property. The trustee has regularly filed quarterly reports pursuant to the terms of his appointment and the Procedural Order, as well as two interim reports, all of which are available to the public. These reports contain statements of expenses, assets, and liabilities of First American and summaries of the trustee's efforts to sell First American's shares and assets. The sealed reports, on the other hand, only contain information about the financial reserves established by First American for claims including appellants' indemnification claims, as well as estimated expenses for handling those actions in the future. Appellants concede that the financial reserves reflect the full amount of those pending claims and therefore are already known to them. As beneficiaries, moreover, appellants would arguably have no right to view the "narratives" accompanying the reserve figures since they do not relate to the "nature and amount of the trust property." RESTATEMENT (SECOND) OF TRUSTS § 173.

Accordingly, finding no abuse of discretion by the district court, we affirm the order denying access to certain sealed material, transcripts of *in camera* conferences, and individualized notice of future filings in the criminal proceeding.