[Cite as *State v. Colopy*, 2011-Ohio-6120.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                         |   | JUDGES:                      |
|-------------------------|---|------------------------------|
| THE STATE OF OHIO,      | : | Hon. W. Scott Gwin, P.J.     |
|                         | : | Hon. John W. Wise, J.        |
| Plaintiff-Appellee,     | : | Hon. Patricia A. Delaney     |
|                         | : |                              |
| v.                      | : |                              |
|                         | : | Case No. 2011-CA-3           |
| ERICA COLOPY,           | : |                              |
|                         | : |                              |
| Defendant-Appellant.    | : | O P I N I O N                |

CHARACTER OF PROCEEDING:      Criminal appeal from the Knox County
Court of Court of Common Pleas, Case No.
10CR02-0022

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      November 28, 2011

APPEARANCES:

For Plaintiff-Appellee

JOHN C. THATCHER
PROSECUTING ATTORNEY
CHARLES T. MCCONVILLE
117 East High Street, 2nd Floor
Mount Vernon, OH 43050

For Defendant-Appellant

JAMES A. GILES
109 East High Street
Mount Vernon, OH 43050

*Gwin, P.J.*

{¶ 1}   Appellant Erica D. Colopy appeals her conviction following a bench trial in the Court of Common Pleas, Knox County on one count of child endangering. The appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶ 2}   In the fall of 2009, appellant and her son, Drezden, were living with her boyfriend, Ricky Poole, and his son Donavon, age four, on West Burgess Street in Mount Vernon, Ohio. On the morning of October 6, 2009, Donavon rode the bus to his 1/2-day Head Start class, where one of his teachers, Lindsey Hill, noted some scratches and marks on his body. Donavon told the teacher he had been scratched by a cat and had fallen on some steps and on the sidewalk. Later that day, after he returned home from Head Start, Donavon somehow suffered a serious injury to his head, causing a loss of consciousness. According to appellant, Donavon was coming down the fourteen-step interior stairwell when he fell and struck his head. Appellant was in the house with Donavon at the time. Appellant called 911, and paramedics thereupon transported the child to Knox Community Hospital, and from there he was transferred to Columbus Children's Hospital. Medical examinations additionally revealed, among other things, chest and pelvic abrasions on Donavon, as well as bruising on and near his penis.

{¶ 3}   Donavon died two days later from cerebral injuries due to blunt head trauma. See testimony of Deputy Coroner Tae Lyong An, M.D., Tr. at 256.

{¶ 4}   The matter was further investigated by Knox County Children's Services, the Mount Vernon Police Department, and the Knox County Sheriff's Office. On February 2, 2010, the Knox County Grand Jury indicted appellant on one count of

involuntary manslaughter (a felony of the first degree), one count of felonious assault (a felony of the second degree), and one count of child endangering (a felony of the third degree).

**{¶ 5}** A jury trial was ultimately scheduled for December 14, 2010. Prior to the commencement of trial, appellant waived her right to a jury and asked for a bench trial. The matter was then heard by the court on December 14, 15, and 16, 2010. The State called a total of fifteen witnesses, including the following:

**{¶ 6}** Ricky Poole, the child's father, recalled that October 5, 2009, the day before Donavon's fatal injury, was marked by a couple of problems. Appellant had taken Donavon and Drezden with her to pick up Ricky after work that evening, at which time they proceeded to a Laundromat. Unfortunately, appellant somehow forgot her purse in the parking lot, from where it was apparently stolen, along with the sole set of car keys inside. Appellant and Ricky contacted the police and had to obtain a ride home. Ricky then returned to the Laundromat lot with a locksmith. Ultimately, Ricky did not get to bed until approximately 1:00 AM.

**{¶ 7}** Ricky testified at trial that on the morning of October 6, 2009, he observed what appeared to be a carpet burn on Donavon's nose and lip area, a mark he did not see the previous evening. Before Ricky left for work, he woke appellant up and asked her what had happened to the boy's face. Appellant stated she did not know, and an argument ensued between the two. Ricky went to work that day with the impression that Donavon would be dropped off after Head Start at the home of his day care provider, Linda Thompson. Instead, Donavon was dropped off with appellant. According to Barbara Williams, the Head Start bus driver who testified later, a female had called and

asked that Donavon, rather than going to Thompson's house, either be dropped off at home or left at the center for someone to pick him up. Williams believed the phone call came from appellant.

{¶ 8} The State also called Karen Bumpus, the 911 dispatcher. A recording of appellant's emergency call from October 6, 2009 was also played. The evidence indicates appellant told the dispatcher that "my stepson just fell down the stairs … and he's like unconscious." See State's Exhibit 2. Appellant further reported to Bumpus that the night before, Donavon had also "tripped" down the stairs. Id.

{¶ 9} Another witness was William Spurgeon, a firefighter paramedic with the Mount Vernon Fire Department. He arrived at the West Burgess address about eight minutes after appellant's 911 call, at which time he assisted Donavon, who was lying on the couch and unresponsive. While transporting Donavon in the squad vehicle, Spurgeon noticed on the child's body "several bruises in different places, all different stages in healing." Tr. at 43.

{¶ 10} The record indicates that Donavon was transported to Knox Community Hospital, where he was seen in the emergency room by Dr. William Jantsch and other staff. Donavon was observed with bruising or marks in the pelvic and pubic regions and abrasions on the abdomen and left chest, as well as an injury to the back of his head in the scalp. Donavon was there only a short time, following which he was flown to Children's Hospital in Columbus.

{¶ 11} According to Ann Ramsey, who assisted Ricky and appellant on October 6, 2009 by watching Drezden, appellant did not immediately go to Children's Hospital. She instead took a nap for about an hour at Ramsey's home, although she did go later

after arranging for her mother to take care of Drezden. Ramsey recalled that appellant also told her she had been making lunch for Donavon when she heard a noise and then saw the child at the bottom of the steps.

{¶ 12} Amy Loman, a friend of appellant and Ricky, testified that she spent a lot of time at the house on West Burgess as a child, which was then, coincidentally, the residence of her aunt. Loman recalled falling down the same set of stairs twice in her childhood years, but she was never injured.

{¶ 13} Corporal Matt Dailey of the Mount Vernon Police Department interviewed appellant at the West Burgess residence at about 5:30 PM on October 6, 2009. Appellant told him that earlier that day, she was cooking a pizza for Donavon, yelling to the child "two or three times to come downstairs." Tr. at 74. When Donovan did not respond, appellant yelled again, but then she heard a "tumble noise." Id. According to Dailey, appellant "said that [Donavon] must have tripped over the clothes basket." Tr. at 75. At trial, Dailey contrasted what appellant told him at the residence interview with what she stated in her 911 call. He noted that in the 911 call, she reported being at the top of the stairs when Donavon's fall commenced, rather than being on the first floor. Furthermore, in the residence interview, appellant reported only seeing the "tail end" of the fall; in the 911 call, appellant indicated she had seen the entire fall.[1] Dailey also observed a discrepancy in appellant's recollection about the pizza: in the interview, appellant's version of events suggested the food was ready to be served; however,

---

[1]  In a video interrogation of appellant, which is included in the present record, appellant is observed returning to her original version of events in which she is at the top of the stairs when she sees Donavon fall.  See State's Exhibit 42, MVPD Interview of October 13, 2009.

Dailey looked at the item while he was in the house and discovered it hadn't been cooked yet.

{¶ 14} The State's final witness was Philip Scribano, D.O., from Nationwide Children's Hospital, Columbus, Ohio. Among his duties, Dr. Scribano is the program director for the hospital's child abuse pediatrics fellowship, which trains physicians in that pediatrics subspecialty. He is board-certified in general pediatrics, pediatric emergency medicine, and child abuse pediatrics. Dr. Scribano led the examination of Donavon on October 7, 2009. He determined: "The findings are not consistent with a fall down stairs, and it's most consistent with abusive head trauma and physical abuse. Sexual abuse cannot be ruled out given the genital injuries noted." Tr. at 318. He also detailed his observations that bilateral retinal hemorrhages, multi-layered, were evident in the child. He concluded: "I do not believe that Donavon's injuries were the result of a fall that was initiated by him down the stairs. I believe that Donavon's injuries were the result of at least two mechanisms, or I should say specifically two mechanisms. One is a shaking mechanism. I believe that the shaking caused some alteration in his level of consciousness, that then either with the terminal event, being thrown down the stairs, or some additional force besides just a free fall of an unconscious child, caused then the severity of the impact injuries. Those injuries caused an impairment in his breathing. I believe that that impairment of his breathing caused further injury to his brain. We didn't talk about the subdural hemorrhages that were noted. And the key brain injury being that and the edema, the swelling of the brain. And I believe that those are the result of child abuse." Tr. at 337-338.

{¶ 15} The sole witness called by the defense was Stephen Guertin, M.D., medical director of the Children's Center of Sparrow Hospital in Lansing, Michigan. He conceded that stair fall deaths are statistically rare, but in his opinion, Donavon's death could be consistent with an accident-based version of events.  In his written report, Dr. Guertin opined:  "In this case you may have a child who has been mistreated in the past.  That does not, however, mean that he could not have:  fallen down a stairway; smacked his head against a wooden baseboard; suffered accidental subdural, subarachnoid and retinal hemorrhages; and died from fatal impact head and cervical spinal cord injuries."  Defendant's Exhibit A at 4.

{¶ 16} After taking the case under advisement, the trial court found appellant not guilty of involuntary manslaughter and felonious assault, but guilty of child endangering, a felony of the third degree.

{¶ 17} On January 28, 2011, the court sentenced appellant to four years in prison.

{¶ 18} Appellant timely filed a notice of appeal. The court also granted a stay of execution upon appellant's request. Appellant herein raises the following two Assignments of Error:

{¶ 19} "I. THE TRIAL COURT'S DECISION, AFTER A BENCH TRIAL, FINDING THE DEFENDANT-APPELLANT GUILTY OF ENDANGERING CHILDREN, A FELONY OF THE THIRD DEGREE AS ALLEGED IN COUNT 3 OF THE INDICTMENT, IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 20} "II. DEFENDANT-APPELLANT WAS DENIED DUE PROCESS OF LAW WHEN, AFTER A BENCH TRIAL, A VERDICT OF GUILTY ON ONE COUNT WAS

FACTUALLY INCONSISTENT WITH THE FINDING OF NOT GUILTY ON THE OTHER COUNTS."

I.

{¶ 21} In her First Assignment of Error, appellant contends her conviction for child endangering is against the manifest weight of the evidence. However, we note appellant appears to be raising a legal sufficiency argument in her brief, rather than a true "manifest weight" argument as stated in the wording of the assigned error.

{¶ 22} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown* (2010), --- U.S. ----, 130 S.Ct. 665, 673, 175 L.Ed.2d 582 (reaffirming this standard). See, *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010-Ohio-2720 at ¶68.

{¶ 23} *Jackson* thus establishes a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence. First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution. *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. This means that a court of appeals may not usurp the role of the finder of fact by considering how it would have resolved the conflicts, made the inferences, or considered the evidence at trial. See Id*.,* at 318-319, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Rather, when "faced with a record of historical facts that supports conflicting inferences" a reviewing court "must presume-

even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; see also *McDaniel,* --- U.S. ----, 130 S.Ct. at 673-674, 175 L.Ed.2d 582; *United States v. Nevils* (C.A.9, 2010), 548 F.3d 802.

**{¶ 24}** Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow "*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560; *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541; *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. See, *State v. Clay*, supra at ¶ 70.

**{¶ 25}** This second step protects against rare occasions in which "a properly instructed jury may * * * convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 317, 99 S.Ct. 2781, 61 L.Ed.2d 560. More than a "mere modicum" of evidence is required to support a verdict. Id. at 320, 99 S.Ct. 2781, 61 L.Ed.2d 560 (rejecting the rule that a conviction be affirmed if "some evidence" in the record supports the jury's finding of guilt). At this second step, however, a reviewing court may not "'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt,' " Id. at 318-319, 99 S.Ct. 2781, 61 L.Ed.2d 560, quoting *Woodby v. INS* (1966), 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362, only whether "*any*" rational trier of fact could have made that finding, Id. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. *Nevils.*

**{¶ 26}** Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine

whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice, *State v. Thompkins* (1997), 78 Ohio St. 3d 387, 678 N.E.2d 541, 1997-Ohio-52, superseded by constitutional amendment on other grounds as stated by *State v. Smith,* 80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the Trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." *State v. Thompkins*, supra, 78 Ohio St.3d at 387, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175. Because the Trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the Trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.

**{¶ 27}** In *Thompkins*, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus; *State v. Miller* (2002), 96 Ohio St.3d 384, 2002-Ohio-4931 at ¶38, 775 N.E.2d 498.

{¶ 28} In the present case, appellant was charged with and convicted of child endangering in violation of R.C. 2919.22(A), resulting in serious physical harm, a third degree felony.

{¶ 29} R.C. 2919.22(A) provides in relevant part:

{¶ 30} "(A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support…"

{¶ 31} R.C. 2919.22(A) is aimed at preventing acts of omission or neglect. See, e.g., *State v. Sammons* (1979), 58 Ohio St.2d 460, appeal dismissed (1980), 444 U.S. 1008; *State v. Kamel* (1984), 12 Ohio St.3d 306, 308; Committee comment to R.C. 2919.22. Where a defendant is charged with a violation of R.C. 2919.22(A), resulting in serious physical harm, the prosecution must prove that the defendant: (1) was the parent, guardian, custodian, person having custody or control, or person in loco parentis of the subject child; (2) recklessly created a substantial risk to the health or safety of the child; (3) created that risk by violating a duty of protection, care or support; (4) and that the defendant's conduct resulted in serious physical harm to the child. *State v. Barton* (1991), 71 Ohio App.3d 455, 463, motion for leave to appeal overruled (1991), 61 Ohio St.3d 1427; *State v. Newman* (Aug. 18, 1995), Ross App. No. 94 CA 2079; *State v. Elliott* (June 22, 1995), Franklin App. Nos. 94APA08-1274 and 94APA08-1275; *State v. Kirk* (Mar. 24, 1994), Franklin App. 93AP-726.

**{¶ 32}** The parties do not dispute that appellant was a person in loco parentis of Donovan. Thus, the evidence offers a substantial basis upon which the jury could reasonably conclude that the first element of R.C. 2919.22(A) was satisfied beyond a reasonable doubt.

**{¶ 33}** To satisfy the fourth element of a violation of R.C. 2919.22(A) appellant's conduct must have resulted in serious physical harm to Donovan. The parties do not dispute that Donovan died as a result of his injuries. Thus, the evidence offers a substantial basis upon which the jury could reasonably conclude that the fourth element of R.C. 2919.22(A) was satisfied beyond a reasonable doubt.

**{¶ 34}** Although not stated in R.C. 2919.22, recklessness is the culpable mental state for the crime of child endangering. *State v. O'Brien* (1987), 30 Ohio St.3d 122, 508 N.E.2d 144; *State v. Conley*, Perry App. No.03-CA-18, 2005-Ohio-3257 at ¶20. Recklessness is defined in R.C. 2901.22(C), which states:

**{¶ 35}** "(C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

**{¶ 36}** To satisfy the second element of a violation of R.C. 2919.22(A), recklessness must create a "substantial risk" to the health and safety of the child. A "substantial risk" is "a strong possibility, as contrasted with a remote or significant possibility, that a certain result or circumstance may occur." R.C. 2901.01(H). See, also, *Kamel, supra,* at 308; *State v. Newman,* supra.

{¶ 37} Appellant's contention under this assignment of error is that the state failed to present sufficient evidence that s*he* committed any acts that resulted in serious physical harm.

{¶ 38} In the case at bar, Dr. Scribano testified that Donovan's injuries were not consistent with a free fall down the stairs. Rather, he opined, the injuries were caused by "a shaking mechanism" combined with a force mechanism. The "force" was not consistent with a free-fall of an unconscious child down the stairs. Appellant version of events evolved over time. Appellant in her 911 call indicated she was at the top of the stairs and witnessed the entire fall. However, appellant later told the police that she was cooking a pizza, called for the child and heard him tumble down the stairs. The paramedics, however, noticed that the pizza was not yet been cooked. Appellant did not immediately go to the hospital choosing instead to take a nap.

{¶ 39} If the State relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." *State v. Jenks* (1991), 61 Ohio St.3d 259, 272, 574 N.E.2d 492 at paragraph one of the syllabus.

{¶ 40} "Circumstantial evidence and direct evidence inherently possess the same probative value [.]" *Jenks*, 61 Ohio St .3d at paragraph one of the syllabus. Furthermore, "[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." *Jenks*, 61 Ohio St.3d at 272, 574 N.E.2d 492. While inferences cannot be based on inferences, a number of conclusions can result from the same set

of facts *State v. Lott* (1990), 51 Ohio St.3d 160, 168, 555 N.E.2d 293, citing *Hurt v. Charles J. Rogers Transp. Co.* (1955), 164 Ohio St. 329, 331, 130 N.E.2d 820. Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. *Lott,* 51 Ohio St. 3d at 168, 555 N.E.2d 293, citing *Hurt,* 164 Ohio St. at 331, 130 N.E. 2d 820.

{¶ 41} The record establishes that Donovan's fatal injuries occurred while he was in the sole care of appellant. Dr. Scribano testified that the injuries were inconsistent with the child free-falling down the stairs. A reasonable trier of fact could have concluded that appellant's contradictory statements as to the events leading up to the reported fall down the stairs, appellant's contradictory statements as to where she was during the incident, and her conduct following the incident was an attempt to conceal how Donovan's injuries really occurred. The trier of fact could reasonably infer from the circumstantial evidence that appellant recklessly, as opposed to intentionally, caused Donovan's injuries.

{¶ 42} In sum, after a careful review of the evidence, we find that competent, credible evidence was submitted by the state on each essential element of the crime of child endangering. We also find that a reasonable trier of fact could have concluded beyond a reasonable doubt that appellant recklessly caused serious physical harm to Donovan.

{¶ 43} Appellant's First Assignment of Error is overruled.

II.

**{¶ 44}** In her Second Assignment of Error, appellant argues he was deprived of due process of law due to inconsistent verdicts. We disagree.

**{¶ 45}** It is well-established "inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." *State v. Brown* (1984), 12 Ohio St.3d 147, 149. "Each count in an indictment charges a distinct offense and is independent of all other counts; a jury's decision as to one count is independent of and unaffected by the jury's finding on another count." *State v. Cope,* Butler App. No. CA2009–11–285, 2010–Ohio–6430, ¶ 69.

**{¶ 46}** Appellant argues, however, that this standard only applies to cases tried to a jury. Appellant cites *United States v. Mayberry*, (2nd Cir 1960), 274 F.2d 899 for the proposition that the principle does not apply when, as in appellant's case, the trial is to the judge.

**{¶ 47}** However, in *Harris v. Rivera* (1981), 454 U.S. 339, 102 S.Ct. 460, the United States Supreme Court considered the question of inconsistent verdicts rendered by a trial judge. The Court acknowledged the general rule that "[i]nconsistency in a verdict is not a sufficient reason for setting it aside" and rejected the contention that "a different rule should be applied to cases in which a judge is the finder of fact." Id. at 345, 102 S.Ct. 460. The Court explained that an apparent inconsistency in a trial judge's verdict does not give rise to an inference of irregularity in his finding of guilt that is sufficiently strong to overcome the presumption that the judge

adhered to basic rules of procedure. Id. See also, *United States v. Chilingirian* (6th

2002), 280 F.3d 704, 710-711.

**{¶ 48}** Appellant was found guilty beyond a reasonable doubt after a fair trial.

Accordingly, we reject appellant's argument alleging inconsistent verdicts based on

different counts occurring after a bench trial.

**{¶ 49}** Appellant's Second Assignment of Error is overruled.

**{¶ 50}** For the reasons stated in the foregoing opinion, appellant's conviction and

sentence for child endangering in the Court of Common Pleas, Knox County, Ohio, is

sustained.

By Gwin, P.J., and

Delaney, J., concur;

Wise, J., concurs

separately

 

_____
HON. W. SCOTT GWIN

_____
HON. JOHN W. WISE

_____
HON. PATRICIA A. DELANEY

*Wise, J., concurring*

**{¶51}** I concur with the majority's decision to affirm appellant's conviction for child endangering. However, I write separately to voice my concerns about the manner in which some of the issues in this appeal were presented to this Court, making our analysis all the more arduous.

**{¶52}** To begin with, as the majority has duly noted, appellant initially creates confusion by raising a legal sufficiency argument in the body of her appellate brief, rather than a true "manifest weight" argument as stated in the wording of her first assigned error. These two arguments are not interchangeable and require different analyses. See, e.g., *State v. Williams,* Scioto App.No. 00CA2731, 2001-Ohio-2579, citing *State v. Ricker* (Sept. 30, 1997), Franklin App.No. 97APC01-96. I am more troubled, however, by the advancement of the State's limited responsive argument that seeks affirmance based solely on the theory that Donavon tripped down the stairs over a laundry basket, the placement and non-supervision of which allegedly constituted "reckless" acts by appellant. See Appellee Brief at 5-7. Based on this theory alone, I would not have been able to affirm the child endangering conviction. I find the argument in the State's brief completely contradicts the State's own expert, Dr. Scribano, who opined that Donavon's fatal injuries were *not* consistent with a self-initiated fall down the stairs and were instead indicative of child abuse. See Tr. at 318, 332-333, 337-338. The majority opinion successfully gets past this problem and incorporates the crucial testimony of Dr. Scribano, but I must emphasize it is not the duty of an Ohio appellate court to create arguments for the parties and search the record for evidence to support them. See *Sisson v. Ohio Department of Human Services,* Medina App.No. 2949–M, 2000 WL 422396.

 

_____

JUDGE JOHN W. WISE

[Cite as *State v. Colopy*, 2011-Ohio-6120.]

IN THE COURT OF APPEALS FOR KNOX COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                              :
                                           :
              Plaintiff-Appellee           :
                                           :
                                           :
-vs-                                       :        JUDGMENT ENTRY
                                           :
ERICA COLOPY                               :
                                           :
                                           :
              Defendant-Appellant          :        CASE NO. 2011-CA-3


        For the reasons stated in our accompanying Memorandum-Opinion, the reasons

stated in the foregoing opinion, appellant's conviction and sentence for child

endangering in the Court of Common Pleas, Knox County, Ohio, is sustained. Costs to

appellant.


                                           _____
                                           HON. W. SCOTT GWIN


                                           _____
                                           HON. JOHN W. WISE


                                           _____
                                           HON. PATRICIA A. DELANEY