[Cite as *In re T.S.G.*, 2014-Ohio-5708.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

IN THE MATTER OF:  T.S.G.,  :  **O P I N I O N**
DELINQUENT CHILD.

                                                    :

                                                    CASE NO. 2014-L-051

Criminal Appeal from the Lake County Court of Common Pleas, Juvenile Division, Case No. 2014 DL 00061.

Judgment:  Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, and *Karen A. Sheppert*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH  44077 (For Appellee).

*Christopher J. Boeman*, 3537 North Ridge Road, Perry, OH  44081 (For Appellant).

THOMAS R. WRIGHT, J.

{¶1}   This appeal is from the final dispositional order in a juvenile proceeding before the Lake County Court of Common Pleas, Juvenile Division.  Following a bench trial, the trial court found beyond a reasonable doubt that appellant, T.S.G., was a delinquent as a result of committing the offense of receiving stolen property, a fourth-degree felony if committed by an adult.  Appellant argues that the "true" finding is against the manifest weight of the evidence.

{¶2}   Tom and Terri Epple live in the Village of Madison, Ohio, and are the president and vice president, respectively, of the Madison Youth Soccer League.  Once a year for over twenty-five years, the soccer league has hosted a major weekend

tournament that is attended by over 150 teams from Ohio and various adjacent states. The tournament is played at five different locations in the village, and the teams are bracketed according to age groups.

{¶3} In 2013, registration for the tournament was held on Friday evening, November 1. Since each team was required to pay a registration fee, the soccer league received over $12,000 in cash and checks over a three-hour period. These funds were placed in four lockboxes which were returned to the Epples at the end of the evening.

{¶4} The Epples placed the four lockboxes in their car and ultimately returned to their home on West Main Street in Madison. Since the funds in the lockboxes had already been counted, they decided to leave them in the car overnight. Besides the lockboxes, Terri Epple left approximately $140 of league funds in a plastic bag inside the vehicle's glove compartment. She had been using those funds earlier that day to purchase minor items needed for the tournament.

{¶5} Early the next morning, the Epples drove to one of the tournament locations to assist in coordinating the event. However, upon their arrival, they realized that the four lockboxes and the separate funds in the glove compartment were no longer in the car. They further discovered that a bag of league t-shirts had been taken from the car. After determining that the foregoing items were stolen the previous night as the vehicle sat in their driveway, the Epples contacted the village police department, and an investigation ensued.

{¶6} The street upon which the Epples reside, West Main, intersects with Eagle Street a short distance from their home. Tracy Shandle lives with her son, Michael

Zarack, at 68 Eagle Street. Despite being on a different street, the Shandle residence is relatively close to the Epple home. During the winter months of each year, it is possible to see the Shandle residence from the Epple's yard, and vice versa.

{¶7} As of November 1, 2013, Michael Zarack was fifteen years old and was attending high school. Michael had a group of friends with whom he would spend time both at his mother's home and in the Eagle Street neighborhood. These friends included appellant and Trevor Coffin. On the evening of November 1, both appellant and Trevor decided to spend the night with Michael at the Shandle home.

{¶8} Directly adjacent to the Shandle home is a four-unit apartment building. The bottom floor of this building has an enclosed area not connected to any of the four apartments but used by the tenants for storage. Although this "common" area has an outside door that was latched, it was accessible to anyone, even a non-resident, once inside the building.

{¶9} Jeremiah White and his fiancée were tenants in one of the units on the night of the theft at the Epple residence. Prior to the incident, White's fiancée was friendly with Tracy Shandle and Michael Zarack. As a result, White recalled seeing Michael and his friends "hanging out" by the door to the enclosed area.

{¶10} In the days immediately following the theft, the village police did not have any leads. However, approximately three weeks later, White was returning Halloween decorations to the enclosed storage area when he noticed the four lockboxes sitting in a white garbage bag. Since White had never seen the lockboxes before, he asked the other tenants whether they belonged to any of them. When no one claimed the lockboxes, White instructed his fiancée **to** take them to the village police.

3

**{¶11}** Upon determining that lockboxes belonged to the soccer league and that all of the tournament registration funds had been stolen from them, the police started to interview various individuals in the Eagle Street neighborhood, including Tracy Shandle, Michael Zarack, appellant, and some of Michael's other friends. At the conclusion of the investigation in January 2014, a complaint was filed charging appellant with six crimes relating to the theft of the soccer league property in the Epples' vehicle. He was charged with one count of receiving stolen property, one count of grand theft, and four counts of safecracking. As to the count of receiving stolen property, the complaint alleged that appellant had exercised control over the lockboxes, and that the lockboxes contained U.S. currency and checks of a value between $7,500 and $150,000.

**{¶12}** At trial, although the state presented ten witnesses, its case against appellant was primarily based upon the testimony of Michael Zarack and Tracy Shandle. Michael testified that, although appellant had already left his mother's house when he awoke on November 2, appellant came back twice to the house during that day. The second time appellant came to the house, he was carrying four lockboxes that were similar in color to the lockboxes taken from the Epples' vehicle. According to Michael, once he saw the lockboxes, he immediately asked appellant to leave his mother's house, and they began to argue about them. Tracy Shandle then testified that when she heard the boys yelling at each other, she walked into the living room and, upon seeing the lockboxes, ordered appellant to take the lockboxes and leave. However, before appellant left, Michael got a white garbage bag from the kitchen to assist appellant in carrying the lockboxes.

4

**{¶13}** Another friend of Michael, Brett Harbert, testified that, while Michael was being held in detention on a separate matter for ten days starting on November 4, 2013, he went to Tracy Shandle's home and asked for her permission to go into Michael's room to retrieve a personal item he had left there. When Tracy said it was alright, he went into the room by himself and, while looking for his item, noticed two "black boxes" pushed inside a dresser. Brett also testified that, on another occasion after Michael was released from detention, he again visited the Shandle home and saw appellant and Michael counting money. Michael additionally testified that after his release from detention, he, Brett, and appellant were sitting in a truck taking pictures of each other on their cell phones and that appellant pulled a plastic bag from his pants pocket containing a roll of money.

**{¶14}** At the close of the evidence, the trial court found that the state did not establish beyond a reasonable doubt that appellant had committed the one count of grand theft and the four counts of safecracking. As to the single count of receiving stolen property, though, the trial court made a finding of "true." After a court magistrate held a separate sentencing hearing, the trial court issued a judgment adopting the magistrate's decision as to sentencing. The court ordered that appellant be institutionalized with the Ohio Department of Youth Services for a minimum period of six months. However, the court then suspended the foregoing order and imposed certain conditions, including that appellant be held in the county juvenile detention facility for ninety days.

**{¶15}** On appeal to this court, appellant raises one assignment of error for review:

5

{¶16} "The trial court erred to the prejudice of juvenile-appellant when it returned a finding of "true" against the manifest weight of the evidence."

{¶17} In challenging the "true" finding regarding the charge of receiving stolen property, appellant first notes that, in discussing the evidence with the assistant prosecutor during closing argument, the trial court stated that it did not find the testimony of Tracy Shandle and Michael Zarack to be "very credible." Building upon this, appellant contends that if Shandle's and Zarack's testimony is completely disregarded as unbelievable, there was no other evidence upon which the trial court could predicate its ultimate "true" finding. He further argues that the trial court's verdict was logically inconsistent, in that if there was sufficient evidence to find that he committed the crime of receiving stolen property, then he should have also been found to have committed grand theft and safecracking.

{¶18} As an initial point, the trial court's verdict on the charge of receiving stolen property was not based upon appellant's alleged retention of Terry Epple's spare money from the glove compartment or the bag of soccer league t-shirts. Instead, the "true" finding was predicated upon his retention or possession of the four lockboxes. As to this charge, the complaint expressly alleged that appellant "did receive, retain, or dispose of certain property, being four (4) lockboxes containing U.S. currency and checks, the property of another, one Terri L. Epple and/or Madison Soccer League, * * *." Furthermore, in stating its verdict on the record at the conclusion of the bench trial, the trial court quoted the foregoing language from the complaint.

{¶19} Appellant's challenge to the verdict is based upon the assumption that the trial court had to rely upon Shandle's or Zarack's testimony in order to justify the "true"

6

finding. Citing the trial court's statement that both Shandle and Zarack were not credible witnesses, he infers from this that the trial court must have rejected all aspects of their testimony. However, other statements made by the trial court during the parties' closing arguments support the conclusion that the court only rejected specific parts of their testimony. Specifically, the statements indicate that the trial court did not believe those aspects of the testimony which was intended to show that Zarack himself played no role in the theft.

{¶20} In addition to testifying about appellant's two visits to his mother's residence on November 2, 2013, Michael Zarack also testified as to the events of the prior evening. He stated that, after watching television with appellant and Trevor Coffin, he went to bed at approximately 11:00 p.m. He further stated that he slept straight through until 10:00 a.m. the next morning, and that appellant had already left by the time he awoke. Along the same lines, Tracy Shandle also testified that, on the night appellant and Trevor slept over, she checked on the boys twice while they were in Michael's bedroom. According to Tracy, when she first checked at approximately 11:00 p.m., her son was asleep, but appellant was still awake watching television. However, when she checked the second time at 3:30 a.m., appellant was gone, but Michael was still asleep in the bedroom.

{¶21} During closing arguments, appellant's trial counsel noted that there were certain discrepancies between Shandle's testimony and Zarack's testimony concerning when appellant visited their home the following day. Trial counsel also noted that, although Zarack originally testified on direct examination that appellant did not attempt to bring the lockboxes into the home until his second visit that day, he modified his

testimony on cross-examination by appearing to indicate that appellant brought the lockboxes to the home on his first visit. In light of this, trial counsel asserted that the testimony of both witnesses had to be rejected because they could not keep their "stories" straight. In response, the trial court stated:

{¶22} "THE COURT: I think the more credible story is they saw - - he saw the evidence, Michael saw the stolen stuff that they stole together and said, 'Hey, get out of here with that.' That's more credible to me."

{¶23} In essence, the trial court was indicating that, while it did believe the testimony as to appellant's attempt to bring the four lockboxes into Shandle's home the next day, it did not believe the testimony of either Shandle or Zarack that Zarack never left his room the night of the theft. In other words, the trial court concluded that Shandle and Zarack were trying to hide Zarack's role in the theft of the lockboxes. However, its rejection of that aspect of the testimony did not cause the court to discredit their entire testimony; i.e., the court still believed that both Shandle and Zarack had seen appellant exercising control over the stolen lockboxes when he brought them to Shandle's residence the day after the theft.

{¶24} At another point during his closing argument, appellant's trial counsel was again emphasizing that, on cross-examination, Zarack appeared to indicate that appellant brought the lockboxes with him during his first visit that day, at approximately 12:00 p.m. Trial counsel then maintained that Zarack's version of the events was illogical because no intelligent person would walk through the neighborhood in broad daylight carrying the four lockboxes. In response, the trial court stated that it disagreed with trial counsel's argument, thereby again indicating that it found Zarack's testimony

credible in relation to appellant's possession of the lockboxes.

{¶25} As noted above, the trial court did assert during the state's closing argument that it found Shandle's and Zarack's testimony to be lacking in credibility. But that assertion must be viewed in light of the foregoing two statements made during appellant's closing argument. Given that the two statements indicate that the trial court believed Shandle and/or Zarack were telling the truth as to the events of November 2, 2013, the court's earlier assertion regarding their credibility only applied to part of their testimony.

{¶26} As a general proposition, the assessment of witness credibility lies solely with the trier of fact; thus, an appellate court cannot substitute its judgment for the jury or the trial judge. *State v. Teague*, 11th Dist. Trumbull No. 2011-T-0012, 2012-Ohio-983, ¶30. As part of this discretion, the trier of fact is free to believe all, part, or none of a witness's testimony. *State v. Williams*, 11th Dist. Lake No 2012-L-078, 2013-Ohio-2040, ¶21. "The trier of fact is in the best position to evaluate inconsistencies in testimony by observing the witness's manner and demeanor on the witness stand – attributes impossible to gleam through a printed record." *Id.*

{¶27} Pursuant to R.C. 2913.51(A), a person has committed the offense of receiving stolen property when he has received, retained, or disposed "of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." The evidence establishes that the outside of the four lockboxes had stickers stating that they belonged to the Madison Soccer League; thus, anyone retaining the lockboxes would have reasonable cause to believe that the items had been stolen. Furthermore, the testimony of Shandle and/or

Zarack constitutes some competent, credible evidence upon which a trier of fact could find that appellant retained possession of all four lockboxes.

{¶28} The record also contains other circumstantial evidence supporting the trial court's verdict on the "receiving stolen property" charge. First, the evidence shows that, on the evening of the theft, appellant spent the night at the Shandle residence, which was only a short distance from the Epple home. Second, appellant did not stay at the Shandle residence the entire night. Third, the lockboxes were in the Epples' vehicle the entire night, making them readily accessible. Fourth, the four lockboxes were ultimately found in a common area of an apartment building adjacent to the Shandle residence. Fifth, the resident of the apartment building who subsequently found the lockboxes had previously seen appellant in the building near the common area. Sixth, a short period after the theft, a friend of both appellant and Zarack not only saw two "black boxes" in Zarack's bedroom, but also saw appellant and Zarack counting a substantial amount of money in that bedroom.

{¶29} Finally, Terri Epple testified that the amount of currency and checks in the lockboxes was greater than $7,500. Therefore, the record supports the trial court's "true" finding for the fourth-degree felony level of receiving stolen property.

{¶30} In addition, this court rejects appellant's separate contention that the trial court's verdict was logically inconsistent. Even if it is assumed that the trial court's finding as to the "receiving stolen property" charge was inconsistent with the remainder of its verdict, this is not a viable reason for reversing the "true" finding; i.e., an apparent inconsistency in a trial judge's verdict as to multiple criminal counts does not create an inference of irregularity that would justify setting aside the guilty verdict. *State v.*

*Colopy,* 5th Dist. Knox No. 2011-CA-3, 2011-Ohio-6120, ¶47. Moreover, as Shandle's and Zarack's combined testimony was primarily relevant to the elements of receiving stolen property, a finding of true as to that offense did not mandate the same finding on the theft and the safecracking charges.

**{¶31}** Even though Shandle's and Zarack's credibility was questioned throughout the trial, the record does not support the conclusion that the trial court erred in finding aspects of their testimony believable. Accordingly, as the trial court's verdict is not against the manifest weight of the evidence, appellant's sole assignment is overruled.

**{¶32}** The judgment of the Lake County Court of Common Pleas, Juvenile Division, is affirmed.

CYNTHIA WESTCOTT RICE, J.,

COLLEEN MARY O'TOOLE, J.,

concur.